Harold H. Hymes, J.
The defendant is accused of offering newspapers for sale on the streets of Utica without first obtaining a license from the city clerk.
The City of Utica has adopted an ordinance entitled "Hawking and Peddling Ordinance”. It requires that a license be obtained from the city clerk by any person who engages in merchandising any goods, wares, commodities or services, "by going from house to house, place of business to place of business, or in any public street or public place”. In this information, the City of Utica seeks to include newspapers *335 within the definition of "goods, wares and commodities”. The defendant moves to dismiss this information on the ground that the application of this ordinance to the sale or distribution of newspapers is illegal, unconstitutional and in violation of the First and Fourteenth Amendments of the Constitution of the United States.
The First Amendment rights of freedom of speech, freedom of the press, freedom of religion, and freedom to assemble have been zealously guarded by the Supreme Court of the United States. Municipal authorities have sought to evade these protections in many ways and for many reasons, but to little avail. Justification for the requirement of a license has taken many forms. They include the prevention of littering the streets (Schneider v State, 308 US 147); the prevention of disorderly conduct or molestation of citizens (Hague v C.I.O., 307 US 496); the maintenance of clean streets (Lovell v City of Griffin, 303 US 444; Hague v C.I.O., supra; Schneider v State, supra); the denial of a permit because of revocation of a prior permit (Kunz v New York, 340 US 290); the denial of a permit because previous meetings had resulted in disorder (Kunz v New York, supra); the prevention of annoyance by loudspeaker or amplifier (Saia v New York, 334 US 558); the prevention of riots, disturbances or disorderly meetings (Hague v C.I.O., 307 US 496, supra); the protection of the public from fraudulent solicitation of funds (Cantwell v Connecticut, 310 US 296; Largent v Texas, 318 US 418; Marsh v Alabama, 326 US 501; Tucker v Texas, 326 US 517); the denial of solicitation for labor support (Thomas v Collins, 323 US 516); the need for fees to provide funds for local government (Murdock v Pennsylvania, 319 US 105; Follett v McCormick, 321 US 573); the prevention of crime and assurance of privacy by prohibiting knocking on doors and ringing of doorbells (Martin v City of Struthers, 319 US 141); the licensing of newspaper dispensing machines to prevent dangerous obstruction of sidewalks (Gannett Co. v City of Rochester, 69 Misc 2d 619).
None of these excuses or subterfuges has succeeded in breaching the wall of protection around the First Amendment.
Municipalities may reasonably regulate the use of public streets and parks, but they cannot infringe upon the constitutional right of freedom of the press. There are many laws already on the statute books which may be enforced to control the dangers and annoyances which are feared by the city *336 authorities. The requirement of a license is not the sole means of protection against these evils.
Almost all of the ordinances reviewed by the Supreme Court have dealt directly with the sale and distribution of periodicals, newspapers, leaflets, books and other forms of literature, and with the assembly of people for lectures, protests and discussions. Few have included newspapers within the category of goods, wares and merchandise. (Largent v Texas, 318 US 418, supra; Tucker v Texas, 326 US 517, supra).
A newspaper is not in the same category as a pineapple or a soap powder or a pair of shoes. It is not just a commodity offered for sale. It is a means of communication. It is one way in which citizens may express an opinion, advocate a point of view, impart information and discuss an issue. Its publication and distribution are protected by the First Amendment.
The newspaper which the defendant was selling on the street is entitled New Solidarity. It is a publication of the National Caucus of Labor Committees and the United States Labor Party. Its content would be classified as "radical”. It attacks the President of the United States, the Vice President, the Secretary of State, and it calls for the impeachment of the Supreme Court. It advocates policies contrary to our accepted philosophy of government. Whether one agrees with this point of view or not, the members of this group have a right, under the Constitution, to communicate their opinions to others. "Those who won our independence had confidence in the power of free and fearless reasoning and communication of ideas to discover and spread political and economic truth. Noxious doctrines in those fields may be refuted and their evil averted by the courageous exercise of the right of free discussion. Abridgement of freedom of speech and of the press, however, impairs those opportunities for public education that are essential to effective exercise of the power of correcting error through the process of popular government”. (Thornhill v Alabama, 310 US 88, 95.)
Any requirement that a license or permit be first obtained before a newspaper can be sold upon the city streets is an act of censorship. The struggle for the freedom of the press was aimed at the power of licensing. "The liberty of the press became initially a right to publish 'without a license what formerly could be published only with one’. * * * The ordinance cannot be saved because it relates to distribution and not to publication. Liberty of circulating is as essential to that *337 freedom as is liberty of publication; indeed, without circulation, the publication would be of little value”. (Lovell v Griffin, 303 US 444, 451, 452.)
The Corporation Counsel has argued that the application of this ordinance is proper, since it requires a license only for a "sale for profit and not for free distribution”. This argument is of no avail against the constitutional guarantee of freedom of the press (Lovell v Griffin, supra).
The requirement of a license is a prior restraint, and violates the First Amendment. "It is not merely the sporadic abuse of power by the censor, but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion. * * * One who might have had a license for the asking may therefore call into question the whole scheme of licensing when he is prosecuted for failure to procure it”. (Thornhill v Alabama, 310 US 88, 97, supra.)
The application of this ordinance to require a license to peddle newspapers is illegal and unconstitutional.
The motion to dismiss the information is granted and the defendant is discharged.