B. BOE, C. Coe, J. Joe, Ralph Palladino, John Duffy, Marie Schall, Allan Wernick and Jose Soto, Plaintiffs,

v.

Joseph COLELLO, Edmund Nelke, John J. Fox, Jr., Irvin Bernstein, Raymond F. Delo, and Ronald Lee, Defendants.

No. 77 Civil 3967.

United States District Court, S. D. New York.

Sept. 3, 1977.

Gladstein, Reif & Siegel, Brooklyn, N. Y., for plaintiffs; James Reif, Brooklyn, N. Y., of counsel.

John J. Fox, Town Atty., Town of Orangetown, Orangeburg, N. Y., for defendants Joseph Colello, Edmund Nelke, John J. Fox, Jr., Irvin Bernstein, and Raymond F. Delo; John J. Fox, Orangeburg, of counsel.

Lexow & Jenkins, Suffern, N. Y., for defendant Ronald Lee; Alfred E. Froh, Suffern, N. Y., of counsel.

1. 42 U.S.C. § 1983.

2. 28 U.S.C. § 2201.

3. Plaintiff applied for a preliminary injunction pending a trial on the merits. The defendants cross-moved for dismissal of the complaint or alternatively for summary judgment. Upon the hearing of the application for preliminary relief, the Court advised counsel that, pursuant to Fed.R.Civ.P. 65(a), the trial of the action on the merits would be advanced and consolidated with that motion and afforded the parties the

OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, alleging claims under the Civil Rights Act[1] bring this action for declaratory and injunctive relief. They seek a judgment: (1) voiding Article 18 of the Orangetown Township Code, the "Hawking and Peddling Ordinance," insofar as it requires plaintiffs to obtain a license for the sale or distribution of *The Call/El Clarin* ("*The Call*") on the public streets;[2] (2) enjoining the defendants permanently from hereafter interfering with plaintiffs' sale or distribution of the paper without first complying with Article 18;[3] and (3) enjoining pending prosecutions against three plaintiffs charged with violation of Article 18.[4]

Section 18–4 of the Article provides: "The merchandising of any goods, wares, commodities or services within the Town of Orangetown without first having obtained a license therefor from the Clerk of the Town is hereby prohibited unless such merchandising is at the personal request of the person solicited."[5] An applicant for a license is required to submit a written application which among other matters requires him to set forth the number of arrests or convictions for crimes and the nature thereof. He is also required to have his fingerprints taken by the Police Department of Orangetown and to deliver his photograph, which together with his fingerprints, are to remain on file in the Orangetown Police Headquarters.[6]

If the Town Clerk is "reasonably satisfied with the applicant's qualifications, he shall issue a license, the annual fee for which is

opportunity to call witnesses. Counsel acquiesced in the Court's determination for a consolidated trial and so this disposition is upon the merits of the controversy.

4. Upon the trial the plaintiffs withdrew their claims for damages.

5. Orangetown, N.Y.Code § 18–4 (1952).

6. *Id.* § 18–6.

$3.00, specifying the particular business authorized and the location where it may be conducted.[7] In the event of the denial of a license to an applicant by the Town Clerk or the refusal of the Chief of Police to countersign a license, the applicant may, within thirty (30) days, request a hearing or review before the Town Board to be held at the next regularly scheduled meeting of the Town Board following the filing of the application for review.[8]

If the Town Board decides that the refusal of the Town Clerk or the Chief of Police was arbitrary or otherwise in error, it "may" grant the license; if the Board decides the action of the Town Clerk or the Chief of Police was not arbitrary or was justified under the circumstances, it "shall" refuse the license. The Board's decision is to be rendered in writing within forty-five (45) days after the hearing.[9] The time estimate from the filing of an application which has been refused to the expiration of the forty-five day period for the rendering of the Board's decision is from eight to ten weeks.

*The Call,* which one witness described as a "revolutionary newspaper" is issued weekly and centers about recent and current world, national and local events with emphasis on the working class problems in the United States and throughout the world. A copy sells for 25 cents.

The plaintiffs are in two categories: five have sold and seek to continue to sell *The Call* (distributor plaintiffs); three are employees of Chromalloy American Corporation ("Chromalloy") who allege they have purchased and read *The Call* in the past and desire to continue to do so. The defendants are the Town Supervisor, the Chief of Police, the Town Clerk, the Attorney and Deputy Attorney of the Town of Orangetown ("Orangetown officials"); also named as a defendant is the Administrative Director of Chromalloy.[10]

Over the past few months, the paper was sold, and in some instances given away free, by the distributor plaintiffs—none of whom had obtained licenses under Article 18—to Chromalloy employees on the public road adjacent to the Chromalloy plants upon a change of regular work shifts shortly before or after 3:00 p. m. Employees entering or leaving the plant did so by automobile and the plaintiff distributors sold or gave *The Call* to employees when a car which was hailed, stopped momentarily on the public area outside the Chromalloy plant.

Events had their inception on or about May 20, 1977 when distributor plaintiffs were selling *The Call* as above described. Chromalloy officials objected to plaintiffs' activities, the reasons for which are disputed.

On June 3, 1977, when plaintiffs again sold *The Call,* the company officials renewed their objections; this time, however, they called in the Orangetown police, who told the distributor plaintiffs that they could not sell the papers without a license, and if they did, they would be arrested. When one of them continued to sell, two policemen grabbed her but no arrests were made.

On June 10th, a distributor plaintiff was arrested and handcuffed by local police, who stated that the arrest was made at the behest of company officials; however, on this occasion the arrestee was released without charges being lodged against him after he had signed a release.

On June 17th, three distributor plaintiffs again sold *The Call* to Chromalloy workers at the usual location as they were leaving or entering the plant. Plaintiffs allege that they were surveilled by Chromalloy personnel who hid behind bushes and that other company officials attempted to direct employees from the company premises in a

7. *Id.* §§ 18–7, 18–9.

8. *Id.* § 18–12 (1958). The Board meets every two weeks.

9. *Id.*

10. The Deputy Attorney was not served with the summons and complaint. The Court finds that all other defendants were properly served with process pursuant to Fed.R.Civ.P. 4(d)(1).

way which prevented them from purchasing the paper.

On July 1st, the first arrests occurred. Three plaintiffs who sold *The Call* were charged with selling the paper without a license in violation of Section 18–4 of the Township Code. The arresting officers told the plaintiffs they could distribute the papers free of charge but if sales were made, licenses had to be obtained. The plaintiffs were also informed that if they returned the next week and sold the paper without having obtained a license, they would be arrested. Upon arraignment in the Orangetown Justice Court, the trial of the arrested distributor plaintiffs was first set for October 19th and later changed to October 21, 1977, almost four months after their arrests.

The following week on July 8th when two of the plaintiffs sold the paper, they were again arrested and charged with violations of Article 18. The trial on these charges is also scheduled for October 21st. On this occasion the police officers directed Chromalloy workers not to stop or talk with *The Call* distributors and one officer stated the police intended to arrest them every week if they sold *The Call* unless a license was obtained.

A final incident took place on July 27th when a distributor was arrested and charged with yet another violation of Article 18. Her trial in the Orangetown Justice Court was also set for October 21st.

One plaintiff was arrested on three separate occasions; another twice; and the third only once. The non-arrested plaintiff distributors also have been advised that attempts to sell the paper without first obtaining a license will bring about their arrests for violation of the ordinance.[11]

■  Defendant Ronald Lee, the Chromalloy Administrative Director, disputes plaintiffs' claims as to his alleged actions. It is desirable to dispose of the case against him before reaching the basic issues posed by the respective claims of the plaintiffs and Orangetown officials. Lee swears that after plaintiff distributors had been warned to stay off Chromalloy's property, they transferred their selling activities to the public town road leading into the Chromalloy parking lot; that their activities resulted in traffic jams in the parking lot as employees were leaving or entering and a number of employees complained; that in the interest of preserving harmony among the employees, and alleviating the traffic problems, he complained on several occasions to the police; that at no time did he make any complaint about the plaintiffs selling *The Call* as such; that his complaints were solely to the effect on traffic which the method of selling produced; and that the decision to arrest the distributor plaintiffs for violation of the township's Hawking and Peddling Ordinance rather than for obstruction of traffic had been made solely by the Orangetown police. While the plaintiffs dispute this and charge that Lee acted in concert with the police and town officials in allegedly violating their constitutional rights, I find that plaintiffs have failed to sustain their burden of proof as to the defendant Lee and accordingly the complaint is dismissed as to him upon the merits.[12]

■  In view of the undeniable fact that all the arrests and the threatened arrests are based upon violations of Section 18–4, the testimony as to traffic conditions during the course of the sale of the newspaper is irrelevant to the issue presented with respect to the plaintiffs' claims against the remaining defendants, the Orangetown officials, which we now address. These de-

---

11. Plaintiffs applied for a temporary restraining order pending the hearing of their motion for preliminary injunctive relief. Upon the return day, counsel for defendants represented that plaintiffs would be permitted to sell and distribute *The Call* without interference pending the hearing and determination of the motion for preliminary injunctive relief.

12. *See, e. g., Grow v. Fisher*, 523 F.2d 875 (7th Cir. 1975); *Mularkey v. Borglum*, 323 F.Supp. 1218 (S.D.N.Y.1970) (private party defendants not acting "in concert" with officials because of complaint filed concerning plaintiff's actions).

fendants do not take issue with the substantive allegations of the complaint and supporting affidavits but urge they are entitled to dismissal of the action as a matter of law.

The essence of the plaintiffs' charge is that Section 18–4 as applied to them by the Orangetown defendants violates their rights of freedom of press and speech secured by the First and the Fourteenth Amendments of the Federal Constitution— in sum, that it denies to the distributor plaintiffs their right to sell *The Call* and correlatively denies to the other plaintiffs their right to purchase and read the paper.

The defendants basically urge under the doctrine of abstention that this Court stay its hand so as to permit the state courts to pass upon and consider plaintiffs' constitutional claim; additionally, they pass that as to the three plaintiffs whose trials are scheduled for October 21st, *Younger v. Harris* [13] and its progeny [14] foreclose granting injunctive relief with respect to those trials; that in any event, those plaintiffs can assert their constitutional challenge in defense of the pending prosecution.

■ The principles of comity and federalism which gave birth to the judicially created doctrine of abstention have been fully explicated on numerous occasions by the Supreme Court and need not be repeated here.[15] Under the doctrine, one of the "special circumstances" which warrants its invocation is the susceptibility of a state statute to an interpretation by the state courts that would avoid or modify the constitutional issue which at once serves both the policy of comity and spares the federal courts unnecessary constitutional adjudication.

The ordinance here at issue requires a license to sell "goods, wares, commodities or services . . .." It does not mention newspapers or periodicals and upon the surface, defendants' plea that this Court invoke the abstention doctrine is plausible since an interpretation by the state courts that the statute does not apply to newspapers would eliminate the constitutional issue. Indeed, defendants, in their brief, in pressing this position state that "[t]here has been no interpretation by a New York State Court having *statewide* jurisdiction as to whether 'goods, wares, commodities or services' in § 18–4 of the Hawking and Peddling Ordinance of the Town of Orangetown includes the sale of newspapers." [16]

■ However, independent research by the Court discloses that New York's highest Court has held that newspapers are "merchandise" within the meaning of a statute prohibiting the sale on Sunday of "any wares, merchandise, . . . goods or chattels." [17] While it is true that the Court of Appeals' ruling is of ancient vintage having been rendered more than one hundred years ago, no subsequent case has impaired its authority so as to suggest that a different construction would be placed upon the instant ordinance because it substitutes "commodities" for "merchandise." [18] Moreover, and importantly, the Orangetown officials have construed the Article as applicable to the sale of newspapers by the arrests and continuing threats of arrest of those

**13.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**14.** *E. g., Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Huffman v. Pursue, Ltd.,* 420 U.S. 502, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1972); *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

**15.** *See, e. g., Kusper v. Pontikes,* 414 U.S. 51, 54, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Lake Carriers Ass'n v. MacMullan,* 406 U.S. 498, 509,

92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Zwickler v. Koota,* 389 U.S. 241, 249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Harrison v. NAACP,* 360 U.S. 167, 176–77, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

**16.** Brief for Municipal Defendants at 1 (emphasis supplied).

**17.** *Smith v. Wilcox,* 24 N.Y. 353, 358 (1862); *see People v. Passafume,* 22 N.Y.S.2d 785 (Ct. Spec.Sess. Westchester County 1940).

**18.** *See People v. Korins,* 87 Misc.2d 334, 385 N.Y.S.2d 474 (Utica City Ct.1976).

who sell *The Call* without first obtaining a license under Section 18–4. Thus, the plea of "special circumstances" dissolves.

The defendants make a further argument in support of abstention. They contend that in addition to the arrested plaintiffs being in a position to raise the issue of constitutionality as a defense to the criminal charges, they and all other plaintiffs who have been threatened with arrest can institute a declaratory judgment action in the New York State Supreme Court to void the ordinance.[19] Thus defendants would relegate plaintiffs who seek vindication of their federally protected rights of freedom of speech and press to the Orangetown Justice Court and the State Supreme Court.

■ Abstention is to be determined upon the facts of each particular case and rests within the Court's discretion in the exercise of its equity power.[20] As already noted, the criminal prosecutions were scheduled for trial in the Orangetown Justice Court four months after the first arrests were made. No explanation has been advanced for this inordinate delay. After their arraignment and the postponement of their trial, the first arrestees were again arrested on subsequent dates when they attempted to sell *The Call*. All the distributor plaintiffs face weekly arrest at least until the date of the deferred trials which is still more than seven weeks away. Each time an arrest was made, the individuals were taken from the place where they were selling the paper, and were processed and booked by the police—a time-consuming procedure which thereby effectively prevented them from selling the paper since by the time they were released, Chromalloy employees changing shifts had either entered or left the plant. The prospect of weekly arrest under the defendants' interpretation that the ordinance applies to the sale of newspapers has an obvious chilling effect upon plaintiffs' First Amendment rights.

The extended and unexplained four-month delay of the criminal cases speaks for itself. Surely, it is of small comfort to those already arrested to be told that they can test their constitutional claim in their defense seven weeks from now and to those who will be subject to arrest if they persist in selling *The Call* without a license that at a future trial, the likely date of which may be four or more months after arrest, that they too can challenge the ordinance as unconstitutional.[21] Equally, a declaratory judgment action if brought by all the plaintiffs in the State Supreme Court would be burdened by the unfortunate and well publicized delays of such litigation and while the case wended its way forward, the plaintiffs would live under the Sword of Damocles in the form of threatened arrests each week they sought to sell the paper.

■ The federal courts are under a positive duty to respect a litigant's choice of a federal forum for the consideration of his federal constitutional claims. The fact that state courts have an equal responsibility to uphold a citizen's federal constitutional rights does not relieve this Court of its responsibility. As the Supreme Court observed:

In *McNeese v. Board of Education*, 373 U.S. 668, [83 S.Ct. 1433, 10 L.Ed.2d 622], we again emphasized that abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim. After examining the purposes of the Civil Rights Act, under which that action was brought, we concluded that "[w]e would defeat those purposes if we held that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court." 373 U.S., at 672, [83 S.Ct. [1433], at 1436]. For the "recognition of

19. N.Y.Civ.Prac. Law § 3001 (McKinney 1974).

20. *Baggett v. Bullitt*, 377 U. S. 360, 375 & n.11, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

21. Upon the trial of this action, defendants' attorney suggested that prompt consideration could have been had of the constitutional plea

after arraignment under sections 170.30 and 170.35 of the N.Y. Criminal Procedure Law. However, it was represented that at the arraignments, plaintiffs' counsel was advised that all such motions were to be deferred until the trial date.

the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law." *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 415–416, [84 S.Ct. 461, 465, 11 L.Ed.2d 440].

These principles have particular significance when, as in this case, the attack upon the statute on its face is for repugnancy to the First Amendment. In such case to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect.[22]

This is such a case. To force plaintiffs to "suffer the delay of state court proceedings" would tend to defeat the very First Amendment rights which they seek to vindicate by this action. The compelling facts in this case require rejection of defendants' plea for abstention. We thus turn to a consideration of the merits of plaintiffs' plea for a declaratory judgment and injunctive relief.

■ The ordinance vests in the Town Clerk power to issue a license "if reasonably satisfied with the applicant's qualifications."[23] The basis upon which the clerk may be "reasonably satisfied" is not stated. The ordinance contains no standards to guide the Town Clerk in reaching his determination. There is a complete absence of guidelines to govern the basis upon which a license may be granted or refused, other than that the Town Clerk is to be "reasonably satisfied" that the applicant is qualified. As drawn, the issuance or rejection of a license is in the unbridled discretion of the Town Clerk. The unlimited, undefined and unfettered authority vested in the Town Clerk to issue or deny licenses under the

defendants' interpretation that a license is required to sell newspapers and periodicals runs riot in violation of First Amendment rights of freedom of press and speech.

What was decided and said by the Supreme Court in *Shuttlesworth v. Birmingham*[24] aptly and directly applies here.

This ordinance as it was written, therefore, fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional. "It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Staub v. Baxley,* 355 U.S. 313, 322, [78 S.Ct. 277, 282, 2 L.Ed.2d 302]. And our decisions have made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license.[25]

The ordinance here in question insofar as it is applied to plaintiffs and others by requiring that they obtain a license in order to sell *The Call* or any newspaper or periodical is void as an infringement of their First Amendment rights; accordingly, plaintiffs are entitled to a judgment so declaring. There remains the question of injunctive relief.

**22.** *Zwickler v. Koota,* 389 U.S. 241, 251–52, 88 S.Ct. 397–398 (1967) (footnotes omitted). *See Lake Carriers Ass'n v. MacMullan,* 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

**23.** Orangetown, N.Y.Code § 18–7. The countersignature of the Chief of Police is required on the license. It was stated and not disputed

that in practice it is the Chief of Police who passes upon an application for a license.

**24.** 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

**25.** *Id.* at 150–51, 89 S.Ct. at 938–939 (footnotes omitted).

*Younger v. Harris*[26] forecloses this Court from enjoining the pending criminal prosecutions scheduled for October 21st. As to the non-arrested plaintiffs, who face successive weekly arrests by the Orangetown officials if they ignore the unconstitutional licensing ordinance and exercise their right of free expression by selling *The Call,* there can be no doubt they are entitled to enjoin Orangetown officials from arresting and prosecuting them for alleged violations of the condemned statute.[27] In view of the prior arrests of others for selling without a license, the threats to these plaintiffs are real—they are neither "imaginary [n]or speculative."[28]

As to those plaintiffs already under prosecution but who face further arrests, there is no sound reason why the same Orangetown officials, proposing the same action as to them under an egregiously unconstitutional ordinance, should not also be enjoined from arresting them for alleged future violations. Those plaintiffs have already had the experience of prior arrests. It is not a first time experience for them. The threat of future arrests and prosecution, week in and week out, is real. They are not required to expose themselves to future repeated arrests and prosecutions, extending over an uncertain time period, in order to press their challenge to an ordinance which they claim—here successfully—deprives them of basic First Amendment rights. To require them to do so subjects them to irreparable injury. This is sufficient to justify equitable relief to them too.[29]

Finally, there are the three plaintiffs, Chromalloy employees, who are deprived of their right to purchase and read *The Call* when the distributor plaintiffs are arrested and prevented from selling the newspaper.[30] The plea of these reader plaintiffs is neither theoretical nor conceptual. Their complaint is real. The deprivation of their right to read what they will is a violation of a basic constitutional right and they are entitled to enjoin continued infringement of that right.

It should be made clear, however, that this injunction runs only against the ordinance hereby declared void insofar as it requires a prior license for the sale of newspapers or other periodicals on the public streets or other public areas. The writ runs no further.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law. A decree may be entered accordingly.

**26.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**27.** *See Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *cf. Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

**28.** *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), *quoting Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**29.** *See Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977).

**30.** *Pell v. Procunier,* 417 U.S. 817, 832, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Martin v. City of Struthers,* 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943).