**DANISH NEWS COMPANY, Plaintiff,**

v.

**CITY OF ANN ARBOR, a municipal corporation, George W. Gardner, individually and in his capacity as Director of the Building Department of the City of Ann Arbor, and Gerard W. Scofield, individually and in his capacity as Zoning Administrator for the City of Ann Arbor, jointly and severally, Defendants.**

**Civ. A. No. 80–73702.**

United States District Court,
E. D. Michigan, S. D.

May 1, 1981.

J. Steven Beckett, Reno, O'Byrne & Kepley, Champaign, Ill., William W. Swor, Detroit, Mich., for plaintiff.

R. Bruce Laidlaw, Ann Arbor, Mich., for defendants.

1. This opinion reflects the Court's Bench Opinion in this matter. Any changes are non-substantive.

## AMENDED OPINION DENYING MOTION FOR PRELIMINARY INJUNCTION [1]

PATRICIA J. BOYLE, District Judge.

### Background

This litigation involves a claim by Plaintiff, operator of a bookstore business in the City of Ann Arbor, that the City, by certain actions taken against it, has violated Plaintiff's constitutional rights. Plaintiff asserts jurisdiction is conferred on the Court by 42 U.S.C. §§ 1983, 1985, and 1988 and by 28 U.S.C. §§ 1331, 1343, 2201, and 2202 and the applicable constitutional provisions.

The essence of Plaintiff's complaint is that the Defendants violated Plaintiff's rights by revoking an occupancy certification on the pretext that the building use was not in compliance with local zoning laws and by obtaining in state court an injunction against further use of the building pending possession by Plaintiff of a valid occupancy certificate. Plaintiff also asserts that a state statute which declares zoning ordinance violations to be nuisances *per se*, M.C.L.A. § 125.587, is unconstitutional as is the Ann Arbor Adult Zoning Ordinance. Plaintiff seeks declaratory and injunctive relief as well as money damages and costs.

Based on the pleadings, affidavits, and sworn statements, the following factual scenario can be constructed, though it is presented in admittedly abridged form. Plaintiff was in the process of readying a building for occupation by a business in the spring of 1980. The City, based on rumor that an adult entertainment business was contemplated, forwarded information regarding zoning regulation of such businesses to the Plaintiff. Apparently, the City issued a certificate of occupancy on the representation that the premises would house a "radio sales and service business." Plaintiff obtained a sign permit for the premises, indicating that the sign would

read "video sales." On April 17, 1980, when business commenced, the sign which had been installed read "Danish News Company." (Sworn Statement of Mr. Peter Stipe, appended as Exhibit D to Defendant's response.) It has never been contested that the business operated at the premises falls within the meaning of an "adult entertainment business" as defined in the Defendant's zoning ordinance, § 5.50. (Exhibit F appended to Plaintiff's First Amended Complaint.)

On April 18, 1980, the Plaintiff was notified by Mr. George Gardner of the City Building Department that continued operation of the business would bring legal action. The asserted basis for action was that the business was being operated in violation of zoning ordinances. The same notification also stated that the certificate of occupancy for the property was void.

Plaintiff continued the business, and on April 28, 1980, a civil action was commenced in Washtenaw Circuit Court pursuant to M.C.L.A. § 125.587 to enjoin a violation of the city's zoning ordinance. At a hearing set for May 7, 1980, counsel for Plaintiff (Danish News) sought and obtained an adjournment. Thereafter, at a hearing held on May 28, 1980, the state court heard arguments of counsel. Defendant (Danish News) contended that *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), required that this be a full and complete hearing on the merits, that granting of a preliminary injunction was beyond the court's power, and that there were insufficient facts on which the court could act. Based on an affidavit alleging that on personal inspection the affiant concluded Danish News is an adult bookstore as defined in the zoning chapter of the Ann Arbor City code, the court entered an opinion and order granting the City's request for a preliminary injunction against continued operation of business. Thereafter, as a result of reopening by Danish News and a motion for finding of contempt by the City, the court clarified its preliminary injunction and filed a supplemental opinion that relies primarily on the state statute which makes zoning violations nuisances *per se* and em-

powers the courts to enjoin such nuisances. M.C.L.A. § 125.587. There is no indication that, in connection with the supplementation of the preliminary injunction opinion and the modification of the preliminary injunction itself, counsel for Plaintiff took any steps to renew and amplify his attack on the propriety of the injunction. On July 3, 1980, the Michigan Court of Appeals considered Plaintiff's application for leave to appeal and motion for immediate consideration. Granting the motion for immediate consideration, the court denied the application for leave to appeal "for failure to persuade the Court of the need for immediate review." (Exhibit H appended to First Amended Complaint.) Similarly, the Michigan Supreme Court granted a motion for immediate consideration but denied leave to appeal, being unpersuaded that the "questions presented should be reviewed by this Court." (Exhibit I appended to First Amended Complaint.) Several code violations had issued against Plaintiff. Counsel, therefore, before the preliminary injunction hearing, requested the court to stay the civil action to avoid self-incrimination problems. The court did informally stay the civil action, and apparently, no further matters have been heard in the civil action.

The criminal actions have resulted in several convictions to date, and aside from possible appeal, criminal prosecution has concluded.

### Discussion

The threshold question in this case, as is evident from the briefs and arguments of counsel, is whether this is a case in which the Court should involve itself. The civil matter arising from the dispute is presently pending in state court, and Defendant contends this is a proper case for equitable restraint. Plaintiff stresses that its attack is on the preliminary injunction only and that it has appealed the preliminary injunction to no avail through the state appellate courts. In his brief in support of his motion for preliminary injunction, Plaintiff did not, for purposes of this proceeding, attack the constitutionality of the Michigan nuisance

*per se* statute, though at argument counsel did indicate that the statute may be under attack for purposes of this proceeding. Plaintiff does not attack the constitutionality of the Michigan preliminary injunction procedure generally.

The concept of abstention is not an easy one. Its application involves subjective analysis of equitable issues. While the term abstention has been used to describe the action of a federal district court in declining to become involved in matters relating to state court and state issues in various circumstances, some courts and commentators have preferred to limit the use of that specific term to situations where deference to state courts on state issues is counselled. *E. g., Puerto Rico International Airlines v. Silva Recio,* 520 F.2d 1342, 1344–45 & n. 4 (1st Cir. 1975); *see Louisville Area Inter-Faith Committee v. Nottingham Liquors, Ltd.,* 542 F.2d 652, 653 (6th Cir. 1976). The concept of deference to state courts on state issues stems most directly from *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and overlaps with the principle that the federal court should not resolve a constitutional issue which might be mooted or modified by a state court interpretation of pertinent state law. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). On the other hand, where the decision to avoid the issue presented to a federal court is premised on the view that state courts are a competent forum in which to litigate constitutional rights and there is presently an action in state court which affords the federal plaintiff the opportunity to litigate the federal claims, then the decision of the federal court to refrain from entertaining the federal action has been termed "equitable restraint"; it is derived from federalism, comity, and traditional equitable concepts. *Louisville Area Inter-Faith Committee v. Nottingham Liquors, Ltd., supra.* This latter form of abstention—equitable restraint—is embodied in the case of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, in particular, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). These cases establish that, absent bad faith, harassment, or a patently invalid state statute, a federal court cannot enjoin a pending state criminal trial, or civil actions that are quasi-criminal in nature.

While it is generally recognized that abstention and equitable restraint should not be broadly applied, *see Hanna v. Toner,* 630 F.2d 442, 443 (6th Cir. 1980), in practice the principles of *Younger* and *Huffman* have been expanded considerably. No longer is it deemed mandatory, for example, that there be a pending state proceeding so long as the policy interests underlying *Younger* are prevalent. *See Parker v. Turner,* 626 F.2d 1 (6th Cir. 1980); *cf. Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). If the state is not a party to the pending action, the interests in restraint are reduced, *Parker v. Turner, supra* at 4, but even if the parties are both private, the Sixth Circuit has applied principles of equitable restraint. *Nottingham Liquors, supra.* Other jurisdictions have been less willing to extend the concepts of *Younger* and *Huffman,* and one court has termed the Sixth Circuit approach on this matter "expansive." *Spiegel v. School District No. 1,* 600 F.2d 264, 267 n. 5 (10th Cir. 1979); *see also Diaz v. Stathis,* 440 F.Supp. 634, 637 n.7 (D.Mass.1977), *aff'd,* 576 F.2d 9 (1st Cir. 1978).

Turning to the particular facts at bar and application of the law to them, it is noted, first, that there are presently pending civil proceedings in state court; criminal proceedings have been completed at the trial level but remain subject to appeal. Plaintiff has not suggested that the constitutional defects in the statutes and the actions of the Ann Arbor officials cannot be addressed by way of defenses in the pending state court actions. Plaintiff does contend that the particular issue of the preliminary injunction is not now subject to state court attack in that the state appellate courts have declined a review of the preliminary injunction ruling at this time.

Plaintiff further suggests that, as a matter of law, consideration of concepts of ab-

stention or equitable restraint are not brought into play by the facts here presented because Plaintiff now seeks only prospective equitable relief which it contends will not interfere with the pending state court actions. Addressing this legal argument first, I note that principles of federalism, comity, and equity cannot so readily be circumvented. The cases cited by Plaintiff involve situations in which the state activity enjoined was distinct from that which formed the basis for the pending state action. For example, the seizure of allegedly obscene films can be enjoined prospectively without having an impact on a pending state proceeding dealing with previously seized films. Similarly, as was true in *Boe v. Colello*, 438 F.Supp. 145 (S.D.N.Y.1977), relied on heavily by Plaintiff, an injunction against future arrests for assertedly first amendment activity is not an act by a federal court which will interfere with the pending state prosecutions and thus is distinct from a *Younger* situation.

In contrast, the relief sought by the Plaintiff at bar clearly implicates principles of comity and federalism, notwithstanding Plaintiff's contention that the relief sought is purely prospective. As a matter of fact, Plaintiff's suggestion that he aims only at prospective relief is belied by the opening line of his discussion of abstention in his reply brief which reads: "That Plaintiff is attempting to undo what was done in the State Courts is without question." Thus, while Plaintiff may not technically seek anything but to be put back in business on a prospective basis, that relief would directly impinge on the action taken by the state court in its pending civil proceeding. Accordingly, considerations of equitable restraint remain at the fore, and the case must be considered with attention to them.

In *Nottingham Liquors, supra*, the Sixth Circuit upheld a district court decision not to hear a matter which sought to overturn a state court injunction against mass picketing and marching in protest of the defendant's business practices. The court observed that the plaintiffs had failed to pursue available state remedies and went on to note its concern that permitting consideration of such issues in federal court would interfere with state court resolution of constitutional issues and would sustain a negative inference as to the state court's ability to enforce constitutional principles.

Plaintiff stresses that it has sought the aid of the Michigan appellate courts but has been rebuffed, and therefore is differently situated than were the *Nottingham Liquors* plaintiffs. To a certain extent, this is true, but consideration of the facts in the case at bar, particularly when they are viewed in light of the equitable concerns that come into play in the equitable restraint area, convinces me that the rationale, if not the particular facts, of *Nottingham Liquors* provides the resolution of the central issue for consideration today.

The declination of review by the state appellate courts amounts to a refusal to grant interlocutory review. The constitutional issues remain an available defense in the state court proceedings, both civil and criminal (on appeal). What *Younger* demands is that the state court defendant be afforded "an opportunity to raise his constitutional claims." 401 U.S. at 49, 91 S.Ct. at 753; *accord, Moore v. Sims, supra*, 442 U.S. at 425, 99 S.Ct. at 2378. The state court proceeding affords Plaintiff ample opportunity to press its constitutional arguments. Furthermore, the factual history suggests the possibility that Plaintiff may have been less than persistent in pursuing his constitutional claims at the trial court levels in the state courts. While it is true that appeals were taken, it is noted that Plaintiff apparently never sought to attack the state court injunction by means of rehearing or by pressing the matter further at the time the injunction was being reformulated to clarify confusion which resulted in Plaintiff's having reopened for business for a short time. From the facts as they stand before this Court, it would appear that the state court never was afforded a brief on the issue of the injunction by the Plaintiffs. At oral argument counsel for Plaintiff said the matter was briefed, but the information before the Court includes no copy of a brief and leaves room for the impression that the

issue briefed was Plaintiff's (defendant's in state court) motion for a stay of proceeding which was subsequently informally granted by the state court. It would seem that Plaintiff might reasonably have sought reconsideration of the injunction in state court, contending that the matter had not been fully briefed. Further, this Court is not supplied with any of the pleadings filed with the Michigan appellate courts, so it is not possible to ascertain the diligence with which the law was compiled and presented to those tribunals. It can also be observed, apart from the foregoing comments, that the transcript provided indicates that the state court stands ready to proceed promptly with this litigation. In the state civil action, Plaintiff sought and obtained a stay and nothing further has transpired. The opportunity to present the issues confronted here today has existed in state court since June, 1980, but Plaintiff has relied on the stay. There is no reason that the issues presented here could not be taken to the state judge, for the rationale underlying the stay would, in theory, apply equally to these proceedings. Evidently counsel believes that the issues brought here are not threatening to his client's rights in the criminal action. Similarly, they would be innocuous if aired in the state civil court. In short, while Plaintiff has removed himself from the literal scope of the *Nottingham Liquors* holding, the facts recited show that he has not escaped its spirit.

To the extent that Plaintiff's reliance on *Boe v. Colello, supra,* suggests that potential delay in the state proceedings would justify this Court's intervention, I cannot accept a contention that delay which falls short of a showing of "great, immediate, and irreparable harm" would permit avoidance of otherwise applicable abstention principles. *Moore v. Sims,* 442 U.S. at 432, 99 S.Ct. at 2382.

■ In reaching this conclusion, I do not intimate that the threat of significant delay in bringing a matter before the state courts in order that a constitutional defense might be aired would never provide a basis for avoidance of equitable restraint principles.

To the contrary, if the state court remedy were indeed elusive—or, as suggested at argument, "ephemeral"—then there would be a basis on which to conclude that federal court intervention is justified. But in the instant case, the state court stated: "The Court commits itself to proceed with all possible speed to decide the case on the merits, eliminating Defendants' only meritourious [sic] argument against the Injunction, damage through delay in resolution on the merits." (Exhibit D to Plaintiff's First Amended Complaint at p. 18) However, Plaintiff (defendant in state court) sought and obtained the stay of the action. This Court remains unconvinced that Plaintiff genuinely faced a choice between protecting fifth amendment interests and proceeding in the civil action to protect first amendment interests. But even if there is validity to the contention that the Plaintiff was forced to delay defense of the civil action pending conclusion of the criminal actions, the fact today is that the criminal actions are complete and proceedings could promptly recommence in the state civil action. Presumably, had Plaintiff indicated to the state judge its readiness to proceed expeditiously, the matter would have been under consideration, if not concluded, at the trial court level by this date. In any event, it can be assumed that Plaintiff may proceed there on an expedited basis. In view of these observations, I conclude that equitable considerations bar the intervention of this Court at this juncture to undo what the state court has ordered.

■ With respect to Plaintiff's contention, pressed at oral argument for the first time in connection with the requested preliminary injunction, that the state nuisance *per se* statute is unconstitutional insofar as its terms apply to alleged zoning violations by businesses engaged in protected first amendment activity, I conclude that this asserted basis for preliminary injunctive relief also must fail. First, it is a proposition that was not briefed. Second, for reasons that follow, this issue is a proper one for abstention in accordance with the case of *Railroad Commission of Texas v. Pullman*

*Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and the doctrine evolving from that precedent.

For purposes of this proceeding, Plaintiff does not contest the constitutionality of the Ann Arbor zoning ordinance. Rather, he contends that the nuisance *per se* statute, M.C.L.A. § 125.587, is unconstitutional and that the procedure followed by the circuit court judge is unconstitutional because *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (per curiam), read together, require the conclusion that where a nuisance *per se* statute is applied to first amendment activity an injunctive order in accordance with the statute is a prior restraint.

Plaintiff's claim, then, as understood by the Court, is that, even accepting the zoning regulation as constitutional, the state statute, which permits a city to bar a property use involving first amendment rights without also requiring the city to comply with a procedure that meets the standards of *Freedman*, is a statute that offends the Constitution. Plaintiff further urges that *Pullman*-type abstention in this context is improper, citing Chief Justice Burger's inability to prevail with a similar argument in the *Vance* case. *Vance*, 445 U.S. at 317, 319, 100 S.Ct. at 1162–1163 (Burger, C. J., dissenting).

In *Freedman* the Supreme Court established procedural safeguards against prior restraints. More recently summarized in *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975), those safeguards provide as follows:

> *First*, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. *Second*, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. *Third*, a prompt final judicial determination must be assured.

*Id.* 560, 95 S.Ct. at 1247 (Italics in original).

The *Vance* case involved an attack on a Texas nuisance statute which the Court of Appeals found to violate *Freedman* by "authorizing a prior restraint of indefinite duration on the exhibition of motion pictures without a final judicial determination of obscenity and without any guarantee of prompt review of a preliminary finding of probable obscenity." 445 U.S. at 309, 100 S.Ct. at 1157 (Court characterizing the 5th Cir. holding). The Supreme Court concurred in the Fifth Circuit's conclusion.

The nuisance statute at issue in *Vance*, Tex.Rev.Stat.Ann., art. 4667, defined the following as a "public nuisance":

> (a) [use of a premises]
>
>    . . . .
>
> (3) For commercial manufacturing, commercial distribution, or commercial exhibition of obscene material;
>
> (4) For the commercial exhibition of live dances or exhibition which depicts real or simulated sexual intercourse or deviate sexual intercourse.

The statute further provided that such activities "shall be enjoined at the suit of either the State or any citizen thereof." *Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159, 165 (5th Cir. 1978) (en banc). Of special concern to the appellate courts was the fact that, pursuant to the statute and Texas procedure as understood by the reviewing courts, a state judge could enter a preliminary injunction of indefinite duration before adjudication on the merits of the obscenity question, and the exhibitor would have to obey the injunction even if the material were ultimately found to be non-obscene. The fact that the injunction would have been issued by a judge rather than by an administrative censor was found by the Court to minimize in no way the need for the procedural safeguards established in *Freedman*.

Chief Justice Burger's dissent stresses that the state courts readily could have concluded that the injunctive procedures were not so open-ended as the federal courts believed and contends that such a finding would vitiate the constitutional infirmity of the statute. Thus he contends

for abstention, criticizing the majority's willingness to accept the interpretation given the state law by the lower federal courts. 445 U.S. at 320 n.4, 100 S.Ct. at 1163 n.4.

This brief review of *Vance* suggests that its facts are distinct from those at bar in material respects. The nuisance statute in issue was directly aimed at obscenity and, therefore, presented the usual problem of discerning the fine line between obscenity—which is not protected by the first amendment—and other suggestive material which does not meet the definition of obscenity and, therefore, enjoys first amendment protection. *See* 445 U.S. at 316 n.13, 100 S.Ct. at 1161 n.13. In contrast, the instant case involves a zoning ordinance which does not purport to forbid display or sale of obscenity but rather defines a particular type of business which may admittedly have first amendment protection and simply regulates the location of the business.

The Supreme Court has considered a zoning regulation comparable to that at bar and has concluded that the incidental impact created on first amendment rights by a limitation of location for first amendment activity is not impermissible so long as the ordinance does not unduly confine the activity and the public can "satisfy its appetite for sexually explicit fare." *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976) (plurality op.). Moreover, as noted above, the Plaintiff, for purposes of this motion, does not contest the validity of the Ann Arbor statute.

Thus, the only question implicated by the attack on the state statute is whether a city which, pursuant to a valid ordinance, issues a zoning violation against a business which assertedly is engaged in first amendment activity must, in connection with seeking an abatement of the presumptive nuisance created by the zoning violation, be required by the court to meet the standards set out in *Freedman v. Maryland*. Because the zoning ordinance does not rely on the fine line between obscenity and protected first amendment material, certain of the reasons for the strict safeguards of *Freedman* evap-

orate. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558–59, 95 S.Ct. 1239, 1246–47, 43 L.Ed.2d 448. The question is rather one of applying the plain terms of the constitutional ordinance to the situation at hand to determine whether the activity of the alleged violator is covered by the zoning ordinance.

It is certainly less than clear that the holdings of *Freedman* and *Vance*, read together, require the conclusion that the state nuisance *per se* statute is invalid insofar as it relates to zoning violations filed, under a constitutional zoning regulation, against entities involved in protected first amendment activity. Furthermore, if *Vance* and *Freedman* can be read for that result, then the interpretation of the state statute could be subjected to a narrowing construction to avoid the constitutional defect. That such an approach would be taken by the courts of the state is not at all unlikely, as evidenced by the circuit judge's attentiveness to the need to proceed expeditiously with the matter before him. In contrast, the hybrid statutory scheme which Chief Justice Burger contended could have been narrowed by construction to pass constitutional muster had at its heart a direct ban on obscenity and, therefore, would have to be narrowed very significantly to meet the *Freedman* standards. Moreover, the lower federal courts familiar with the state law were in agreement as to its scope and interpretation.

It does appear, then, that the challenged statute need not meet the standards set out in *Freedman* since it imposes an incidental zoning-related limitation on first amendment activity. It is not necessary or appropriate, however, to reach and decide finally this difficult issue, for the state courts are equally capable of addressing it and, if necessary, of narrowing the statute by appropriate judicial construction. I conclude, therefore, that it is appropriate for this Court to abstain from deciding the question of the validity of the state statute. Though the pendency of a state action is not a requisite for *Pullman*-type abstention, where, as here, there is a pending state

action in which the issues can promptly be aired and through which the state courts can take action to narrow the statute if they deem necessary, abstention in accordance with the *Pullman* doctrine is especially appropriate.

Plaintiff also urges that the action of the City in revoking its certificate of occupancy was violative of due process. Thus, Plaintiff contends that it should be granted injunctive relief against the state court preliminary injunction which was founded on the conclusion that the Plaintiff (defendant in the state court action) had no valid certificate of occupancy. I find Plaintiff's overall argument on this question unavailing. No caselaw cited by Plaintiff supports the proposition that a municipality, upon discovery of what it believes is fraud in the procurement of a license, must, *before* revocation of the license, afford the licensee a hearing. Plaintiff has not in any specific way rebutted the Defendant's observation that there were avenues of administrative appeal which were not utilized by the Plaintiff. In this regard it is instructive to note that a period of about ten days elapsed between the time Plaintiff was notified of the voiding of the certificate of occupancy and the filing of the civil action by the city. It does not appear that Plaintiff attempted to utilize this time to challenge the action regarding the certificate of occupancy. Thus, because the presence of a due process wrong appears dubious, I find no ground for a preliminary injunction on the basis of these claims.

In the alternative, the equitable relief sought is being pursued by a party which, under the facts as recounted above, stands before this Court with unclean hands, at least insofar as the injunctive relief related to the certificate of occupancy is concerned. Plaintiff has not contested Defendant's assertion that the applications filed with the city for a certificate of occupancy and for a sign permit both represented something different from what actually occurred. No justification for this discrepancy has been offered, and the Court is loath to grant relief of the type sought to a party which itself has dealt in less than a straightforward way with the Defendant.

Based, then, on this discussion of the precedents and the facts presented in this case, this federal Court will "stay its hand," at least insofar as the equitable claims filed with the Court are concerned, since equitable restraint is proper. This ruling extends to both the injunctive and the declaratory relief prayers since the Sixth Circuit has found no distinction between the two for purposes of equitable restraint. *Nottingham Liquors, supra.*

This conclusion does not reach the question of whether the case should be dismissed in its entirety on the basis of equitable restraint. The damages claims brought in this Court under 42 U.S.C. § 1983 may not themselves compete with concerns of comity and federalism, particularly when the interest of the federal court in vindication of federal rights is brought into focus.[2] While an argument can be made that if *Younger/Huffman* principles come into play at all, no part of the action relating to constitutional claims may be maintained, *see generally*, P. Kurland and G. Casper, 1977: The Supreme Court Review, 196 at n. 25 (1978), the Sixth Circuit, as alluded to above, has expressed some doubt about the treatment of Section 1983 damages claims in cases otherwise proper for abstention. *Nottingham Liquors, supra* at 655. Accordingly, this action will not be dismissed *in toto*; only claims for equitable relief are dismissed in accordance with the doctrine of equitable restraint. The damages issues are retained subject to further consideration upon renewed motion and full briefing by the parties.

---

**2.** In 1972 it was resolved that the Anti-Injunction Act, 28 U.S.C. § 2283, is no bar to issuance of a district court injunction against state court proceedings in a 1983 action. However, the principles of *Younger/Huffman* must still be considered independently, even in the context of a 1983 claim. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).