VAN BUREN CHARTER TOWNSHIP v GARTER BELT, INC

Docket No. 238571. Submitted September 16, 2003, at Detroit. Decided September 25, 2003, at 9:00 A.M. Leave to appeal sought.

The Charter Township of Van Buren brought an action in the Wayne Circuit Court against Garter Belt, Inc., seeking to enjoin the defendant from violating a township ordinance that prohibits nudity at establishments licensed to sell alcohol. The court, John D. O'Hair, J., granted summary disposition in favor of the township and entered an order granting a permanent injunction. The defendant appealed.

The Court of Appeals *held*:

1. The totality of the circumstances does not establish that the probability of actual bias was so high as to require the disqualification of the trial judge without a showing by the defendant of actual bias or prejudice. Error requiring reversal did not occur and the chief judge of the circuit court did not abuse his discretion in finding that the presumption of judicial impartiality had not been overcome with a showing that the trial judge was actually biased or prejudiced.

2. State law does not preempt the township's ordinance. The Court of Appeals is bound by precedent wherein the Court of Appeals held that a local ordinance that was identical to the plaintiff's ordinance neither conflicted with nor was preempted by MCL 41.181. The definition of nudity in the ordinance does not conflict with and is not preempted by MCL 41.181. The adoption of MCL 436.1916(3) was not intended to prevent a local unit of government from enacting an ordinance prohibiting topless activity or nudity in a licensed premises located within that local unit of government.

3. The trial court did not err in applying rational basis scrutiny to the plaintiff's ordinance and in finding that it was constitutionally valid and enforceable.

4. The plaintiff was not required to demonstrate that nude dancing in establishments selling alcohol caused adverse secondary effects by conducting an empirical study in the community before adopting the ordinance. A municipality may adopt an ordinance to address its concerns regarding adverse effects it reasonably believes may occur in the community in the future and may rely on

evidence generated by other cities that it reasonably believes is relevant to the problem sought to be addressed. The affidavit of the defendant's expert did not cast sufficient doubt on studies finding adverse secondary effects from adult entertainment businesses to create an issue of material fact requiring a trial.

5. The enforcement of the plaintiff's content-neutral, constitutional ordinance is not a prior restraint and does not violate US Const, Am I.

6. The ordinance is not unconstitutionally overbroad or vague. The ordinance does not present a real and substantial danger of sweeping within its ambit constitutionally protected speech. The ordinance provides fair notice of prohibited conduct and does not confer unfettered discretion on those empowered to enforce it.

7. There is no violation of due process resulting from the enforcement of the ordinance. The defendant's expectation in the continuation of existing law is not a property interest subject to due process protection.

Affirmed.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick B. McCauley, David J. Szymanski,* and *Patrick Burkett*), for the plaintiff.

*Rubin & Rubin, P.L.L.C.* (by *Allan S. Rubin*), and *Shafer & Associates, P.C.* (by *Bradley J. Shafer*), for the defendant.

Before: MARKEY, P.J., and CAVANAGH and SAAD, JJ.

MARKEY, P.J. Defendant Garter Belt, Inc., appeals by right the trial court's order granting plaintiff, Charter Township of Van Buren, summary disposition and a permanent injunction enforcing the township's ordinance prohibiting nudity at establishments licensed to sell alcohol. Defendant also appeals the denial of its motion to vacate the judgment and disqualify the trial judge. We first find that no abuse of discretion occurred with regard to the denial of defendant's motion for judicial disqualification and conclude that due process does not require disqualification under

the totality of the circumstances presented in this matter. We also hold that state law does not preempt the township's ordinance because we conclude that the Legislature did not intend its regulation of nudity at establishments licensed to sell alcohol to change the longstanding broad authority of local governments to regulate liquor trafficking within their jurisdiction. We consider last defendant's constitutional claims.[1] We hold that both Van Buren Township's ordinance and the permanent injunction are constitutionally valid.

### I. SUMMARY OF MATERIAL FACTS AND PROCEEDINGS

Defendant owns and operates a bar in Van Buren Township that features nude dancing and is licensed by the Michigan Liquor Control Commission (LCC). In March 1999, Van Buren Township enacted Ordinance No. 02-16-99(2) (§ 6-69 of plaintiff's code of ordinances), which prohibits persons "appearing in a state of nudity" from frequenting, loitering, working, or performing in any establishment licensed or subject to licensing by the Michigan Liquor Control Commission. It is not disputed that defendant featured nude dancing long before the adoption of § 6-69 and that Van Buren Township's ordinance is worded identically to that part of a Clinton Township ordinance that this Court held "constitutionally valid and

---

[1] We first review nonconstitutional issues "that might obviate the necessity of deciding the constitutional" issues. *Taxpayers of Michigan Against Casinos v Michigan*, 254 Mich App 23, 43; 657 NW2d 503 (2002). See also *People v Riley*, 465 Mich 442, 447; 636 NW2d 514 (2001) ("constitutional issues should not be addressed where the case may be decided on nonconstitutional grounds").

enforceable" in *Jott, Inc v Clinton Charter Twp*, 224 Mich App 513, 548; 569 NW2d 841 (1997).

After defendant failed to comply with § 6-69, plaintiff sued, seeking to enjoin defendant from featuring nude dancing that violates the ordinance. Defendant answered and, by affirmative defenses and a counterclaim, sought to have the ordinance declared unconstitutional. Plaintiff moved for summary disposition, arguing that the ordinance was not a complete ban on nude entertainment, but, instead, was a valid liquor control ordinance designed to combat known adverse secondary adverse effects associated with the combination of nudity and the consumption of alcohol. Defendant argued that nude dancing is a form of expression protected by the First Amendment, US Const, Am I, and that plaintiff improperly enacted its ordinance without proof that defendant's bar caused any adverse secondary effects. Specifically, defendant argued that subsequent decisions of the United States Supreme Court superseded *Jott*.

The trial court disagreed that a legislative body must hold an evidentiary hearing to determine whether a proposed ordinance would further a legitimate governmental interest. Instead, the trial court concluded that a legislative body could consider any material it deems pertinent and may also employ common sense. The court concluded that under the Twenty-first Amendment, US Const, Am XXI, the state and local units of government have authority to control liquor traffic within their jurisdiction even though such regulation may incidentally affect activity protected by the First Amendment. Finding that the case at bar was controlled by *Jott*, the trial court granted

summary disposition to plaintiff and permanently enjoined defendant from violating the ordinance.

On December 28, 2001, this Court denied defendant's motion for a stay of the judgment and the injunction. We denied reconsideration on January 9, 2002. On January 23, 2002, our Supreme Court denied defendant's application for leave to appeal. This Court denied defendant's motion for peremptory reversal on April 18, 2002.

## II. JUDICIAL DISQUALIFICATION

We review for an abuse of discretion the trial court's factual findings on a motion for disqualification, but the application of the facts to the law is reviewed de novo. *Cain v Dep't of Corrections*, 451 Mich 470, 503 n 38; 548 NW2d 210 (1996); *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001).

A judge is disqualified when he cannot hear a case impartially. *Cain, supra* at 503. But a party challenging the impartiality of a judge "must overcome a heavy presumption of judicial impartiality." *Id.* at 497. In general, the challenger must prove a judge harbors actual bias or prejudice for or against a party or attorney that is both personal and extrajudicial. MCR 2.003(B)(1); *Cain, supra* at 495; *Armstrong, supra* at 597. Here, the public comments Judge John D. O'Hair purportedly made in 1996 when he was the Wayne County Prosecuting Attorney do not establish the requisite actual bias or prejudice to overcome the presumption of judicial impartiality.

At the hearing on defendant's motion, Judge O'Hair denied having any personal bias or prejudice. He also

denied knowing that defendant's owner, who had contributed funds to a "Dump O'Hair" election year effort in 1996, was even involved in this case. Indeed, O'Hair asserted that he did not take such matters personally and had "long forgotten" events defendant raised until the motion to disqualify was filed after the court had already ruled. Further, O'Hair affirmed that his decision was controlled by the law, and not by any discretionary fact-finding on his part. On review de novo, Chief Judge Michael F. Sapala found that O'Hair had been "a long-time sitting Judge of the Wayne County Circuit Court, blessed with an impeccable reputation with regard to integrity." Chief Judge Sapala also found that comments on public issues attributed to O'Hair while he was the prosecutor five years earlier were insufficient to demonstrate actual bias in light of O'Hair's impeccable reputation. The chief judge's factual findings are reviewed with deference, and the record here does not establish that an abuse occurred in finding that O'Hair was not actually biased or prejudiced. *Cain, supra* at 503.

We also find no merit in defendant's argument that the appearance of bias is too high to be constitutionally tolerated. Due process requires judicial disqualification without a showing of actual prejudice only in the most extreme cases. *Cain, supra* at 497-498. A showing of actual bias is not necessary to disqualify a judge where " 'experience teaches that the probability of actual bias . . . is too high to be constitutionally tolerable.' " *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975), quoting *Withrow v Larkin*, 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975). Our Supreme Court noted such situations include: (1) where the judge has a pecuniary interest in the out-

come; (2) where the judge has been the subject of personal abuse or criticism from the party before him; (3) where the judge is enmeshed in other maters involving the complaining party; or (4) where the judge might have prejudged the case because of having previously acted as an accuser, fact-finder, or initial decision maker. *Crampton, supra* at 351. Although not exclusive, the *Crampton* categories should be narrowly interpreted in light of examples provided by the Supreme Court and are "not to be viewed as catch-all provisions for petitioners desiring disqualification." *Cain, supra* at 500 n 36.

Defendant does not claim that Judge O'Hair held a pecuniary interest in the instant case, but does claim that the other *Crampton* categories apply. But defendant produced only newspaper reports from 1996 showing that defendant's principal owner, who is not a party to the instant case, had been critical of Judge O'Hair's criminal law enforcement activity when the judge was the prosecutor five years earlier. Defendant's owner had also contributed to an anti-O'Hair political fund. According to press reports, O'Hair responded to the attack by stating that he would not be intimidated from enforcing the law. " 'The mere fact that a judge has been subjected to press criticism in connection with a case or a party does not necessarily require the judge's disqualification.' " *Cain, supra* at 515, quoting *Illinois v Coleman*, 168 Ill 2d 509, 541; 660 NE2d 919 (1995). Here, there was no evidence to contradict Judge O'Hair's claim that he did not know who owned defendant until after rendering his ruling and had not taken long-forgotten criticism personally. Narrowly construed, the *Crampton* "personal abuse" category does not apply.

Similarly, *Crampton* categories three and four, narrowly construed, did not require recusal of Judge O'Hair on the basis of his activity as a prosecutor five years before in enforcing the criminal law and his public comments related to that activity. Defendant's claims do not demonstrate that Judge O'Hair was "enmeshed" with a party in other matters, or that he had prejudged civil enforcement of a township ordinance regulating establishments that serve alcohol. Generally, a prosecutor is not disqualified from future activity as a judge, unless he had directly participated in the same case, MCR 2.003(B)(3), or directly participated in the prosecution of the defendant within the prior two years, MCR 2.003(B)(4). See *People v Williams (After Remand)*, 198 Mich App 537, 544; 499 NW2d 404 (1993), and *People v Delongchamps*, 103 Mich App 151, 156; 302 NW2d 626 (1981). Also, topics that were once hot topics will cool with the passage of time. *Cain, supra* at 515. And, " 'Prior written attacks upon a judge are . . . legally insufficient to support a charge of bias or prejudice on the part of a judge toward an author.' " *Id.* at 516 n 52, quoting *United States v Bray*, 546 F2d 851, 858 (CA 10, 1976). Finally, "[t]he mere fact that a judge has previously expressed himself on a particular point of law is not sufficient to show personal bias or prejudice." *Id.* at 857.

The totality of the circumstances must be examined to determine if the present case is so extreme that due process requires disqualification without proof of actual bias. *Armstrong, supra* at 598. We conclude that the totality of the circumstances, including the

suspect timing[2] of the motion after Judge O'Hair had ruled in plaintiff's favor, *Wayne Co Jail Inmates v Wayne Co Chief Executive Officer*, 178 Mich App 634, 665; 444 NW2d 549 (1989), does not establish that the probability of actual bias is so high as to require disqualification without a showing of actual bias or prejudice. *Armstrong, supra* at 599. Because Chief Judge Sapala did not abuse his discretion in finding that the presumption of judicial impartiality had not been overcome with a showing that Judge O'Hair was actually biased or prejudiced, error warranting reversal did not occur.

### III. STATE LAW PREEMPTION

We review de novo a trial court's ruling on a motion for summary disposition and its resolution of constitutional issues raised. *Id.* at 582. Whether state law preempts plaintiff's ordinance is a question of law involving statutory construction that we also review de novo. *Saginaw Co v John Sexton Corp of Michigan*, 232 Mich App 202, 214; 591 NW2d 52 (1998).

Defendant, relying on *Nadeau v Clinton Charter Twp*, 827 F Supp 435 (ED Mich, 1992), argues that MCL 41.181, through its definition of "nudity," limits a township to imposing "pasties and G-strings" regulations. Defendant also argues that MCL 436.1916(3) divests counties with a population of ninety-five thou-

---

[2] Although defense counsel claimed to be surprised that Judge O'Hair heard plaintiff's motion for summary disposition on November 30, 2001, the trial court record reflects a September 6, 2001, scheduling order signed by Judge O'Hair, acting for and in the absence of Judge Jeanne Stempien. The trial court record also contains a proof of service by mailing the scheduling order to both of defendant's cocounsel on September 17, 2001.

sand or more from enacting topless activity regulations broader than those found in state law. We disagree. State law does not preempt local regulation of nudity at establishments licensed to sell alcohol because MCL 436.1916(3) expressly states, in part: "This section is not intended to prevent a local unit of government from enacting an ordinance prohibiting topless activity or nudity on a licensed premises located within that local unit of government." This Court is also bound by *Jott, supra* at 543-545, which held that a local ordinance identical to plaintiff's neither conflicted with nor was preempted by MCL 41.181. MCR 7.215(J)(1); *Dunn v Detroit Auto Inter-Ins Exchange,* 254 Mich App 256, 260-261; 657 NW2d 153 (2002).

The *Jott* Court held that state law did not preempt Clinton Township from adopting an ordinance nearly identical to the one at issue in this case. *Jott, supra* at 543-545. Although MCL 41.181 conferred general authority on townships to regulate public nudity, the ordinance at issue regulated liquor traffic rather than nudity per se. *Jott, supra* at 544. And the Court found evidence that the Legislature did not intend to preempt local regulation because it had "conferred control over alcoholic beverage traffic in this state on the LCC, which . . . has adopted Rule 436.1409(1),[3] explicitly recognizing the authority of local governmental units to prohibit different types of nudity in establish-

---

[3] 1980 AACS, R 436.1409(1), effective February 3, 1981, provides: "An on-premises licensee shall not allow in or upon the licensed premises a person who exposes to public view the pubic region, anus, or genitals or who displays other types of nudity prohibited by statute or local ordinance." The rule has not been amended or repealed since the adoption of 1998 PA 58, the Michigan Liquor Control Code, MCL 436.1101 *et seq.*, effective April 14, 1998.

ments holding liquor licenses." *Jott, supra* at 544-545. Further, "it has long been recognized that local communities possess 'extremely broad' powers to regulate alcoholic beverage traffic within their bounds through the exercise of their general police powers, subject to the authority of the LCC when a conflict arises." *Id.* at 545, citing *Bundo v Walled Lake,* 395 Mich 679, 700; 238 NW2d 154 (1976), and *Tally v Detroit,* 54 Mich App 328, 334; 220 NW2d 778 (1974). So, this Court held that the definition of nudity in MCL 41.181 neither conflicted with nor preempted Clinton Township's ordinance. *Jott, supra* at 545.

With respect to defendant's argument that MCL 41.181 preempts plaintiff's ordinance, *Jott* is binding precedent on this Court. MCR 7.215(J)(1); *Dunn, supra* at 260-261. Defendant's reliance on *Nadeau, supra,* is misplaced because that case addressed the same Clinton Township ordinance at issue in *Jott.* This Court is not bound by federal decisions interpreting Michigan law. *Ryder Truck Rental, Inc v Auto-Owners Ins Co, Inc,* 235 Mich App 411, 416; 597 NW2d 560 (1999). Moreover, *Nadeau* was vacated by stipulation of the parties. See *Jott, supra* at 522.

But defendant also argues that the Legislature codified state liquor laws after *Jott* was decided by adopting 1998 PA 58, effective April 14, 1998. Defendant points to § 916 of the Michigan Liquor Control Code (MLCC), MCL 436.1101 *et seq.,* which requires liquor licensees to obtain entertainment, dance, and topless activity permits. MCL 436.1916. Defendant specifically relies on subsection 916(3) of the MLCC, which provides:

An on-premises licensee shall not allow topless activity on the licensed premises unless the licensee has applied for

and been granted a topless activity permit by the commission. This section is not intended to prevent a local unit of government from enacting an ordinance prohibiting topless activity or nudity on a licensed premises located within that local unit of government. This subsection applies only to topless activity permits issued by the commission to on-premises licensees located in counties with a population of 95,000 or less. [MCL 436.1916(3).]

Defendant argues that because Van Buren Township is situated in Wayne County with a population number greater than ninety-five thousand the third sentence of subsection 916(3) removes the specific legislative grant of authority to local governments found in the second sentence. In essence, defendant argues that the state has preempted local regulation of nudity in licensed establishments in counties with a population count greater than ninety-five thousand pursuant to the first of four guidelines set forth in *People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977), for determining when the state has preempted local regulation "by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation." The *Llewellyn* guidelines provide a state regulatory scheme preempts local regulation: (1) when state law expressly provides that the state's authority is exclusive; (2) when preemption is implied in legislative history; (3) although generally not sufficient by itself, when the pervasiveness of the state regulatory scheme supports such a finding; and, (4) when the nature of the regulated subject matter demands exclusive state control to achieve the uniformity necessary to serve the purpose or interest of the state. See *Rental Prop Owners Ass'n of Kent Co v Grand*

*Rapids*, 455 Mich 246, 257; 566 NW2d 514 (1997), and *Llewellyn, supra* at 323-324. Defendant argues that the state has expressed its intention in subsection 916(3) to exclusively occupy the field of regulating nudity in licensed establishments located in large counties. See, e.g., *Michigan Coalition for Responsible Gun Owners v Ferndale*, 256 Mich App 401, 413-414; 662 NW2d 864 (2003) (holding that when the Legislature has expressly stated its intent to exclusively occupy a field it is unnecessary to consider the other three *Llewellyn* factors).

Applying well-settled principles of statutory construction, defendant's argument fails. This Court's primary obligation when interpreting a statute is to ascertain and give effect to the intent of the Legislature. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). We must presume the Legislature intended the meaning clearly expressed and must enforce a statute as written. *Id.*; *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). Thus, speculation about an unstated legislative purpose must not replace the unambiguous, plain text of a statute. *Gladych, supra.* Where an ambiguity requires interpretation, the statutory language should be construed reasonably, keeping in mind the purpose of the act. *Draprop Corp v Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001).

We cannot accept defendant's speculative claim that the third sentence of MCL 436.1916(3) defeats the explicit, expressed intent in the second sentence. *Gladych, supra.* Defendant's construction also contravenes the settled principle that every word, phrase, and clause of a statute be given effect. *Morey, supra* at 330. More important, the Legislature is presumed

to be aware of longstanding judicial, see *Jott, supra* at 545, and administrative interpretations, see 1980 AACS, R 436.1409(1),[4] upholding local control of nudity in connection with liquor trafficking. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505; 475 NW2d 704 (1991); *Consumers Power Co v Dep't of Treasury*, 235 Mich App 380, 388; 597 NW2d 274 (1999). Although aware of the longstanding administrative and judicial deference to local control, the Legislature did not positively revoke the LCC's longstanding rule, nor disapprove this Court's holding in *Jott*. Rather, the Legislature expressly provided that the adoption of § 916 was "not intended to prevent a local unit of government from enacting an ordinance prohibiting topless activity or nudity on a licensed premises located within that local unit of government." MCL 436.1916(3). Parts of a statute must be read in the context of the entire statute so as to produce a harmonious whole, *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001). Here, the Legislature granted local units of government the ability to veto any state permit, MCL 436.1916(3). In sum, defendant's interpretation of MCL 436.1916(3) is unreasonable in light of the express language the Legislature used and the longstanding judicial and administrative interpretation approving extremely broad authority of local governments to regulate liquor trafficking. *Jott, supra* at 545.

Although legislative analysis is of limited value in interpreting a statute, *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180

---

[4] See n 3.

(2001), a reasonable interpretation of the statute consistent with its express language is set forth in House Legislative Analysis, Third Analysis, HB 4454, July 9, 1998. After commenting on the apparent problem addressed by recodification of liquor control laws, the analysis reads: "In addition, some have proposed adding language to the liquor code to allow local governments more authority to regulate topless entertainment." *Id.*, p 1. After summarizing the proposed recodification, the analysis provides, in part:

> In addition to the reorganization of sections, the bill would make the following *substantive changes*:
>
> The bill would create a topless activity permit for on-premise licensees, in addition to the dance and entertainment permits currently issued under departmental rules. . . . Topless activity would be banned without a topless activity permit in those counties with a population of 95,000 or less. However, a local unit of government would not be prevented from enacting an ordinance to prohibit topless activity or nudity on licensed premises within its jurisdiction. [*Id.*, p 4.]

We therefore conclude that the Legislature intended through the express language of MCL 436.1916(3) to continue the longstanding broad authority of a local government to regulate liquor traffic within its jurisdiction. Accordingly, we hold that state law does not preempt local regulation of nudity at establishments licensed to sell alcohol.

IV. CONSTITUTIONAL ISSUES

A. STANDARD OF REVIEW

We review de novo both a trial court's ruling on a motion for summary disposition and its resolution of

any constitutional issues raised. *Armstrong, supra* at 582. Statutes and ordinances are presumed to be constitutional and the burden of proving otherwise rests with the challenger. *Gora v Ferndale*, 456 Mich 704, 711-712; 576 NW2d 141 (1998); *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002). Further, we must construe a statute or ordinance as constitutional unless its unconstitutionality is clearly apparent. *Owosso v Pouillon*, 254 Mich App 210, 213; 657 NW2d 538 (2002); *People v Barton*, 253 Mich App 601, 603; 659 NW2d 654 (2002).

### B. RATIONAL BASIS SCRUTINY OF LIQUOR REGULATIONS

Defendant argues that the trial court erred by applying rational basis scrutiny to liquor control laws as employed by the *Jott* Court in reliance on *California v LaRue*, 409 US 109; 93 S Ct 390; 34 L Ed 2d 342 (1972), and its progeny. *LaRue* held that the Twenty-first Amendment conferred broad powers on the states to regulate sexually explicit entertainment in establishments licensed to sell alcoholic beverages. In particular, defendant argues that *Jott* has been superseded by subsequent decisions of the United States Supreme Court, including *44 Liquormart, Inc v Rhode Island*, 517 US 484; 116 S Ct 1495; 134 L Ed 2d 711 (1996), and *City of Erie v Pap's A M*, 529 US 277; 120 S Ct 1382; 146 L Ed 2d 265 (2000), which applied intermediate scrutiny established in *United States v O'Brien*, 391 US 367; 88 S Ct 1673; 20 L Ed 2d 672 (1968), for expressive conduct protected by the First Amendment. We disagree. *Jott, supra*, binds this Court. MCR 7.215(J)(1). The United States Supreme Court has not clearly repudiated, either in *44 Liquormart, supra*, or *Pap's, supra*, the underlying

premise of *LaRue* and its progeny that a state may, in the exercise of its inherent police powers, constitutionally regulate appropriate places where liquor may be sold, including prohibiting nudity at establishments licensed to sell alcohol.

The Supreme Court in *LaRue, supra,* upheld the constitutionality of California's ban on nudity, and real or simulated sexual acts, in establishments licensed to serve alcohol. The *LaRue* Court observed that "the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." *LaRue, supra* at 114. The Twenty-first Amendment provides, in part: "The transportation or importation into any State . . . for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." US Const, Am XXI. Although not holding that the Twenty-first Amendment superseded other parts of the United States Constitution, the *LaRue* Court nevertheless concluded that "the case for upholding state regulation in the area covered by the Twenty-first Amendment is undoubtedly strengthened . . . ." *LaRue, supra* at 115. The Court also concluded that California's determination that the "sale of liquor by the drink and lewd or naked dancing and entertainment" should not occur in the same place was rational. *Id.* at 115. And the Court reasoned that although some of the banned performances "are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board," but rather "has merely proscribed such performances in establishments that it licenses to sell liquor by the drink." *Id.*

at 118. Thus, the *LaRue* Court held that California's ban on "bacchanalian revelries" at establishments licensed to sell alcoholic beverages did not violate the United States Constitution "[g]iven the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires . . . ." *Id.* at 118-119.

The Supreme Court affirmed its holding in *LaRue* in at least three subsequent decisions: *Doran v Salem Inn, Inc,* 422 US 922; 95 S Ct 2561; 45 L Ed 2d 648 (1975), *New York State Liquor Auth v Bellanca,* 452 US 714; 101 S Ct 2599; 69 L Ed 2d 357 (1981), and *Newport, Kentucky v Iacobucci,* 479 US 92; 107 S Ct 383; 93 L Ed 2d 334 (1986). In *Doran,* the Court upheld a preliminary injunction against enforcement of a local ordinance that banned topless dancing not only in bars but also in any public place. The Court summarized *LaRue* and held "that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as a part of its liquor license program." *Doran, supra* at 932-933. But because the ordinance was not limited to bars and no other legitimate state interest was suggested to counterbalance the constitutional protection presumptively afforded to activities within the scope of the ordinance, the preliminary injunction was held to have been properly issued. *Id.* at 933-934.

In *Bellanca, supra,* the Supreme Court considered a challenge based on the First Amendment to a New York law banning nude dancing at establishments licensed to sell liquor for consumption on the premises. The Court reviewed its decisions in *LaRue* and

*Doran*, and concluded that the state of New York had done just what the Court had said a state could do. *Bellanca, supra* at 717. The Court reasoned that because New York possessed the power to ban the sale of alcoholic beverages entirely it could also ban the sale of liquor on premises where topless dancing occurs. *Id.* While not requiring legislative findings to support the ban, the Court found them in a legislative memorandum that included the observation that " '[c]ommon sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior.' " *Id.* at 718. So, the Court held that New York had "chosen to avoid the disturbances associated with mixing alcohol and nude dancing by means of a reasonable restriction upon establishments which sell liquor for on-premises consumption." *Id.* The Court concluded that New York's policy choice did not violate the United States Constitution given the " 'added presumption in favor of the validity of the state regulation' conferred by the Twenty-first Amendment . . . ." *Id.*, quoting *LaRue, supra* at 118.

In *Iacobucci*, the city of Newport, Kentucky, enacted an ordinance that prohibited nude or nearly nude dancing in local establishments licensed to sell liquor for consumption on the premises. A challenge to the ordinance under the First and Fourteenth Amendments failed in the federal district court. *Id.* at 92-93. The Sixth Circuit Court of Appeals reversed the holding of the district court, 785 F2d 1354 (CA 6, 1986), finding that *Bellanca* did not apply because in Kentucky local voters, not the city or the commonwealth, determine whether alcohol may be sold locally. *Iacobucci, supra* at 94. The Supreme Court disagreed, finding that *Bellanca* controlled because

the commonwealth's authority under the Twenty-first Amendment extended to the city. *Id.* at 94. The Court opined:

> In holding that a State "has broad power . . . to regulate the times, places, and circumstances under which liquor may be sold," *Bellanca*, 452 U.S., at 715, this Court has never attached any constitutional significance to a State's division of its authority over alcohol. The Twenty-first Amendment has given broad power to the States and generally they may delegate this power as they see fit. [*Iacobucci, supra* at 96.]

This Court, relying on *LaRue* and *Bellanca*, applied rational basis scrutiny to a First Amendment challenge to a Clinton Township ordinance identical in pertinent parts to plaintiff's ordinance. *Jott, supra* at 538. The *Jott* Court found that the parts of the Clinton Township ordinance identical to the Van Buren Township ordinance at issue here were rationally related to the legitimate governmental interest of eradicating the effects of " ' "undesirable behavior" ' " stemming from a combination of alcohol and nudity. *Id.* at 546, quoting *Bellanca, supra* at 718, quoting the legislative memorandum relied on in *Bellanca*. After severing invalid parts of the ordinance, this Court held "the remainder of the ordinance constitutionally valid and enforceable." *Jott, supra* at 548.

In *44 Liquormart, supra* at 489, the Supreme Court held that Rhode Island's statutory prohibition against advertisements containing accurate information about retail prices of alcoholic beverages was invalid because it abridged speech protected by the First Amendment. The *44 Liquormart* Court held that the Twenty-first Amendment did not shield the ban on

commercial speech from constitutional scrutiny.[5] *Id.* at 488, 516. The Court also limited its decision in *LaRue.* "Without questioning the holding in *LaRue,* we now disavow its reasoning insofar as it relied on the Twenty-first Amendment." *Id.* at 516. The Court reasoned that because the Twenty-first Amendment did not diminish other provisions of the United States Constitution, including the Supremacy Clause, the Establishment Clause, or the Equal Protection Clause, it would not diminish the First Amendment. *Id.* Nevertheless, the Court opined that "[e]ntirely apart from the Twenty-first Amendment, the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations." *Id.* at 515. Moreover, a state's inherent police powers "provide ample authority to restrict the kind of 'bacchanalian revelries' described in the *LaRue* opinion regardless of whether alcoholic beverages are involved." *Id.*

In *Jott* this Court specifically rejected defendant's argument that *44 Liquormart* requires a higher level of scrutiny than rational basis when reviewing a state's exercise of its police powers under the Twenty-first Amendment to regulate appropriate places to sell alcohol. The *Jott* Court opined:

> We reject plaintiff's claim, asserted at oral argument, that the holding in *LaRue* was recently overruled by the Supreme Court in *44 Liquormart, Inc v Rhode Island,* 517 US 484; 116 S Ct 1495; 134 L Ed 2d 711 (1996). Unlike this case, *44 Liquormart* was a "commercial speech" case. It

---

[5] A decade before the Supreme Court decided *44 Liquormart,* this Court held that a ban on advertising liquor prices was an unconstitutional restraint on commercial speech not shielded by the Twenty-first Amendment. *Michigan Beer & Wine Wholesalers Ass'n v Attorney General,* 142 Mich App 294; 370 NW2d 328 (1985).

involved a challenge to a state law banning advertisement of retail liquor prices. The Supreme Court expressly noted that laws suppressing speech are subject to greater constitutional scrutiny than laws suppressing forms of conduct. Although the Supreme Court did retreat somewhat from its position in *LaRue*, it did so only insofar as *LaRue* advanced the proposition that the constitutional prohibition against laws abridging freedom of speech embodied in the First Amendment may be shielded from attack by virtue of the Twenty-first Amendment. Indeed, the court expressly stated that it was not questioning its holding in *LaRue*. The Court noted that *LaRue*, unlike the case before it, was not a commercial speech case, but instead concerned the regulation of nude dancing where alcohol was served. The Court expressly stated that its analysis in *LaRue* would have yielded the same result, independent of the Twenty-first Amendment, in light of the state's ample inherent powers to prohibit the sale of alcoholic beverages in inappropriate locations and to restrict the kind of sexual activities described in *LaRue*. For these reasons, we find that *44 Liquormart* does not affect the disposition of this case. [*Jott, supra* at 539 n 6.]

*Jott* is binding on this Court. MCR 7.215(J)(1); *Dunn, supra* at 260-261.

We also reject defendant's claim that the Supreme Court's decision in *Pap's A M, supra*, requires a different result because *Pap's* did not address the issue of where alcohol may be sold but, rather, concerned a general community-wide ban on nudity similar to that considered in *Doran, supra*. Thus, *Pap's* does not call into question the state's exercise of its police power to "prohibit the sale of alcoholic beverages in inappropriate locations." *44 Liquormart, supra* at 515; *Jott, supra* at 539 n 6.

Defendant's argument is also not supported by *Los Angeles v Alameda Books, Inc*, 535 US 425; 122 S Ct 1728; 152 L Ed 2d 670 (2002). That case addressed

whether the city of Los Angeles could rely on a 1977 study of crime to justify its zoning restrictions on adult entertainment businesses (prohibiting them within one thousand feet of each other or within five hundred feet of a religious institution, school, or public park). *Id.* at 430-433, 441. The Supreme Court in *Alameda Books* intended to clarify the standard of review for content-neutral time, place, and manner regulations designed to combat adverse secondary effects of businesses that purvey sexually explicit materials. *Id.* at 433-434; *Renton v Playtime Theatres, Inc*, 475 US 41, 49-50; 106 S Ct 925; 89 L Ed 2d 29 (1986). Content-neutral time, place, and manner regulations are constitutionally valid if they are "designed to serve a substantial governmental interest and [allow] for reasonable alternative avenues of communication." *Id.* at 50; *Jott, supra* at 529.

The plurality opinion in *Alameda Books* concluded that Los Angeles could rely on its 1977 study because it supported the city's theory that a concentration of adult operations in one locale attracts crime. *Alameda Books, supra* at 442. The Court reasoned that a governmental unit is entitled to rely on "any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." *Id.* at 438, citing *Renton, supra* at 51-52, and *Barnes v Glen Theatre, Inc*, 501 US 560, 584; 111 S Ct 2456; 115 L Ed 2d 504 (1991) (Souter, J., concurring in judgment). The government meets its burden if the evidence relied on fairly supports its rationale. *Alameda Books, supra* at 438. If a challenger fails to cast direct doubt on the government's rationale, either by demonstrating that the evidence does not support the rationale of the

government or by furnishing evidence that disputes the government's factual findings, the municipality meets the *Renton* standard. *Id.* at 438-439. If the challenger is successful in raising doubt about the government's rationale, "the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." *Id.* at 439. Importantly, the plurality opinion did not address whether the government must actually consider the evidence supporting its rationale before adopting the regulation. *Id.* at 442. Rather, the Court left intact its prior holding that the government may support its rationale with studies of the experience of other governments, and on court opinions addressing the same topic. See *Renton, supra* at 51-52.

So, even if plaintiff were required to apply an intermediate level of scrutiny to demonstrate that its ordinance was a content-neutral time, place, and manner regulation designed to serve a substantial governmental interest while allowing for reasonable alternative avenues of communication, it would have met its burden. Plaintiff could reasonably rely on the finding adopted by the Supreme Court and by this Court that " '[c]ommon sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior.' " *Bellanca, supra* at 718, quoting a legislative memorandum relied on in *Bellanca; Jott, supra* at 546.

Furthermore, Bryce Kelley, the township planner responsible for drafting the ordinance, testified in a deposition that his understanding of the experience of other communities in separating alcohol and nudity was that it created a better community. "A city's

'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'" *Alameda Books, supra* at 444 (Kennedy, J., concurring), quoting *Young v American Mini Theatres, Inc,* 427 US 50, 71; 96 S Ct 2440; 49 L Ed 2d 310 (1976) (plurality opinion). Kelley also testified that he compared the number of police runs to defendant's bar with the number of police runs to a strip mall containing no adult entertainment establishments and found thirty percent more police runs to defendant's business. Although Kelley testified that he did not present this information to the township board before the adoption of the ordinance, the person who was the township clerk at the time the ordinance was enacted recalled Kelley discussing the issue when the ordinance was being considered.

More importantly, Kelley testified that he sought assistance from a consulting company, McKenna Associates, that prepared a report for the township board concerning several ordinance revisions, including Ordinance No. 02-16-99(2), which regulated sexually oriented businesses. The McKenna report, based on studies from a number of municipalities, summarized adverse secondary effects of sexually oriented businesses, including topless bars:

> These studies, taken together, provide compelling evidence that sexually oriented businesses are associated with high crime rates and depression of property values. In addition, such businesses can dramatically change the character of the community because of noise, litter, and illicit activities generated by them. [Deposition of Bryce Kelley, exhibit 2, McKenna report, p 1]

In summary, we hold that the trial court did not err by applying rational basis scrutiny to plaintiff's ordi-

nance and finding that it was constitutionally valid and enforceable. *Jott, supra* at 545-548. Moreover, MCR 7.215(J)(1) requires this Court to follow *Jott, supra*. Under *LaRue* and its progeny, as modified by *44 Liquormart*, a state may exercise its inherent police powers and constitutionally regulate appropriate places where liquor may be sold, including prohibiting nudity at establishments with liquor licenses. "[T]he State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations." *44 Liquormart, supra* at 515. Finally, even if we apply intermediate level scrutiny to plaintiff's ordinance, we still find it to be a constitutional content-neutral time, place, and manner regulation that is designed to combat adverse secondary effects of the combination of alcohol and nudity and that allows for reasonable alternative avenues of communication. *Iacobucci, supra* at 96-97; *Jott, supra* at 527, 545-546.

## C. A DISPUTED MATERIAL FACT ISSUE DOES NOT REQUIRE A TRIAL

Defendant also argues that there is no evidence in the record of adverse secondary effects from defendant's business and that it presented evidence that there are no adverse secondary effects from adult entertainment in general, or from defendant's business in particular. At a minimum, defendant argues that a sufficient question of fact existed concerning such secondary effects to avoid the grant of summary disposition. We disagree.

A municipality may adopt an ordinance to address its concern regarding adverse effects it reasonably believes may occur to the community in the future. In *Jott, supra* at 528-529, this Court rejected the claim that defendant Clinton Township had not justified its

zoning ordinance restricting locations of adult entertainment uses "because, at the time the ordinance was enacted, not a single adult use existed in the township and because defendant never conducted its own independent study regarding the impact of adult uses in the community." The *Jott* panel relied on *Renton, supra,* where the Supreme Court upheld the constitutionality of a zoning ordinance restricting adult motion picture theaters, opining:

> "We hold that Renton was entitled to rely on the experiences of Seattle and other cities . . . in enacting its adult theater zoning ordinance. The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." [*Jott, supra* at 529, quoting *Renton, supra* at 51-52.]

In both *Renton* and *Jott* the municipality considered the experience of other cites with adult entertainment business. *Renton, supra* at 50; *Jott, supra* at 529. Further, the United States Supreme Court held that the city of Renton could rely on the "detailed findings" of adverse secondary effects of adult entertainment businesses in an appellate decision[6] addressing the type of ordinance at issue. *Renton, supra* at 51. In *Pap's, supra,* the plurality opinion recognized that the ordinance of the city of Erie prohibiting public nudity (effectively banning nude dancing without pasties and G-strings) was aimed at combating crime and other negative secondary effects "which we have previously recognized are 'caused by

---

[6] *Northend Cinema, Inc v Seattle,* 90 Wash 2d 709; 585 P2d 1153 (1978).

the presence of even one such' establishment." *Pap's, supra* at 291, quoting *Renton, supra* at 47-48, 50. The Court observed that "[e]ven in cases addressing regulations that strike closer to the core of First Amendment values, we have accepted a state or local government's reasonable belief that the experience of other jurisdictions is relevant to the problem it is addressing." *Pap's, supra* at 297, citing *Nixon v Shrink Missouri Government PAC*, 528 US 377, 393 n 6; 120 S Ct 897; 145 L Ed 2d 886 (2000) (applying "exacting scrutiny" and upholding Missouri's campaign finance legislation against First Amendment challenge). And the Court noted that *O'Brien, supra*, which applied intermediate scrutiny to federal legislation banning draft card burning, "required no evidentiary showing at all that the threatened harm was real." *Pap's, supra* at 299. Clearly, plaintiff was not required to demonstrate that nude dancing in establishments selling alcohol caused adverse secondary effects by conducting an empirical study in the community before adopting its ordinance.

We also reject defendant's argument that an affidavit by its expert, Dr. Daniel Linz, cast sufficient doubt on studies finding adverse secondary effects from adult entertainment businesses to create an issue of material fact requiring trial. Dr. Linz opined that "there is absolutely no *properly* conducted studies or research that establish or demonstrate that exotic dance clubs which serve alcoholic beverages engender *sufficient* 'secondary effects' so as to warrant the enactment" of plaintiff's ordinance.[7] Dr. Linz also

---

[7] Affidavit of Dr. Daniel Linz, ¶ 9, exhibit D, defendant's response to plaintiff's motion for summary disposition (emphasis added).

noted his work was submitted to the Supreme Court in *Pap's, supra,* in an amicus curiae brief, and that Justice O'Connor (plurality opinion) and Justice Souter (concurring and dissenting) commented on it. In that regard, Justice O'Connor wrote: "In *Nixon,* however, we flatly rejected that idea [to require an empirical study to support the city's conclusion concerning adverse secondary effects] . . . (noting that the 'invocation of academic studies said to indicate' that the threatened harms are not real is insufficient to cast doubt on the experience of the local government)." *Pap's, supra* at 300, citing and quoting *Nixon, supra* at 394. Moreover, as already discussed, this Court held in *Jott* that a rational basis exists for banning nudity from establishments licensed to sell alcohol. No further evidentiary showing by plaintiff was necessary in this case where plaintiff's ordinance and the one this Court held to be "constitutionally valid and enforceable" were, in pertinent part, identical. *Jott, supra* at 548.

### D. AN INJUNCTION ENFORCING PLAINTIFF'S ORDINANCE IS NOT A "PRIOR RESTRAINT"

Defendant next argues that the issuance of a permanent injunction is an unconstitutional prior restraint of expression protected by the First Amendment. We disagree.

"Any system of prior restraints on expression bears a heavy presumption against its constitutional validity." *Cadillac v Cadillac News & Video, Inc,* 221 Mich App 645, 649; 562 NW2d 267 (1997), citing *Bantam Books, Inc v Sullivan,* 372 US 58, 70; 83 S Ct 631; 9 L Ed 2d 584 (1963). The term "prior restraint" is used to describe an administrative or judicial order that for-

bids certain communications in advance of the time that the communications are to occur. *Alexander v United States*, 509 US 544, 550; 113 S Ct 2766; 125 L Ed 2d 441 (1993). Temporary restraining orders and permanent injunctions, which actually forbid speech activities, are classic examples of prior restraints. *Id.* Prior restraints usually arise in efforts by the government to suppress obscenity. See, e.g., *Cadillac News & Video, supra.* In *Freedman v Maryland*, 380 US 51, 58-59; 85 S Ct 734; 13 L Ed 2d 649 (1965), the Supreme Court held that the First Amendment required procedural safeguards to guard against suppression of protected speech when attempting to ban unprotected speech. The *Freedman* Court held unconstitutional a state system for the licensing of movies, holding "because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint." *Id.* at 58. To pass constitutional muster a prior restraint of unprotected expression must meet three conditions:

> *First,* the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. *Second,* any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. *Third,* a prompt final judicial determination must be assured. [*Southeastern Promotions, Ltd v Conrad*, 420 US 546, 560; 95 S Ct 1239; 43 L Ed 2d 448 (1975), summarizing *Freedman, supra.*]

Defendant relies on *Vance v Universal Amusement Co, Inc*, 445 US 308; 100 S Ct 1156; 63 L Ed 2d 413 (1980), to support the argument that the injunction here is a prior restraint. In *Vance,* the Supreme Court

held a Texas statute unconstitutional on the basis that it authorized an invalid prior restraint because it permitted enjoining the future showing of films that had not yet been found to be obscene when a movie theater had exhibited obscene films in the past. *Id.* at 316. The Court held that the fact that a judge had issued the injunction in *Vance* did not save the statute from constitutional infirmity and that "the absence of any special safeguards governing the entry and review of orders restraining the exhibition of named or unnamed motion pictures, without regard to the context in which they are displayed, precludes the enforcement of these nuisance statutes against motion picture exhibitors." *Id.* at 317.

Although being "'in a state of nudity' is not an inherently expressive condition," *Pap's, supra* at 289, nonobscene nude dancing may be a form of expression falling within the outer limits of protection by the First Amendment, *Jott, supra* at 526, citing *Barnes, supra* at 565-566. On the other hand, the First Amendment does not protect nude dancing involving lewd, sexual activity. *Michigan ex rel Wayne Co Prosecutor v Dizzy Duck,* 449 Mich 353, 360-361, 365; 535 NW2d 178 (1995). So a censor's effort to ban nude dancing because it is obscene may experience difficulties in separating nonobscene expressive conduct from obscene nude dancing. Defendant's argument fails because neither plaintiff's ordinance nor the injunction at issue here totally bans nude dancing on the basis that it is obscene; the ordinance and the order to comply with the ordinance only prohibit nude dancing at a place where liquor is sold. *Jott, supra* at 538. The "'critical fact is that [the ordinance and the injunction enforcing it] has not forbidden

[nude dancing] across the board.'" *Id.*, quoting *LaRue, supra* at 118.

In *Danish News Co v Ann Arbor*, 517 F Supp 86 (ED Mich, 1981), affirmed without opinion 751 F2d 384 (CA 6, 1984), Judge Patricia A. Boyle, then a United States District Court judge, and later a Michigan Supreme Court justice, declined to entertain the plaintiff's constitutional challenge to a zoning ordinance of the city of Ann Arbor restricting locations of "adult entertainment business." Finding the zoning ordinance constitutional, the state trial court granted Ann Arbor a preliminary injunction because the plaintiff's business, an adult bookstore, was a nonconforming use that constituted a nuisance per se. *Id.* at 88. This Court and our Supreme Court denied the plaintiff's application for leave to appeal. *Id.* Like defendant, the plaintiff in that case argued that *Freedman, supra*, together with *Vance, supra*, "require the conclusion that where a nuisance per se statute is applied to first amendment activity an injunctive order in accordance with the statute is a prior restraint." *Danish News, supra* at 92. But Judge Boyle found that enjoining a violation of Ann Arbor's zoning ordinance was materially distinguishable from enjoining the future showing of films under the nuisance statute in *Vance*, which was aimed at obscenity, because the statute in *Vance* "presented the usual problem of discerning the fine line between obscenity which is not protected by the first amendment [sic] and . . . material which does not meet the definition of obscenity and, therefore, enjoys first amendment protection." *Danish News, supra* at 93. In contrast, a zoning ordinance "does not purport to forbid display or sale of obscenity but rather defines a particular

type of business which may admittedly have first amendment protection and simply regulates the location of the business." *Id.* Thus, Judge Boyle opined:

> Because the zoning ordinance does not rely on the fine line between obscenity and protected first amendment material, certain of the reasons for the strict safeguards of *Freedman* evaporate. See *Southeastern Promotions, Ltd v Conrad*, 420 U.S. 546, 558-59, 95 S. Ct. 1239, 1246-47, 43 L. Ed. 2d 448. The question is rather one of applying the plain terms of the constitutional ordinance to the situation at hand to determine whether the activity of the alleged violator is covered by the zoning ordinance. [*Danish News, supra* at 93.]

Thus, the instant case is not one where procedural safeguards are invoked because it is not necessary to draw the fine line between obscene and nonobscene nude dancing. The plain terms of plaintiff's constitutional ordinance are simply applied to the undisputed facts, i.e., that defendant provided nude dancing at its establishment licensed to sell alcohol. Enforcement of plaintiff's content-neutral, constitutional ordinance is simply not a prior restraint. In *Benton Co v Kismet Investors, Inc*, 653 NW2d 193 (Minn App, 2002), the court affirmed the lower court's finding that the defendant's business offering nude dancing violated the county's zoning ordinance, and therefore, affirmed the issuance of a permanent injunction. The ordinance had previously been held to be a constitutionally valid time, place, and manner regulation. *Id.* at 194, 198, citing *Kismet Investors, Inc v Benton Co*, 617 NW2d 85, 93-95 (Minn App, 2000). See, also, *Village of Winslow v Sheets*, 261 Neb 203; 622 NW2d 595 (2001) (upholding the constitutionality of a village ordinance banning totally nude dancing and affirming

the issuance of a permanent injunction enforcing the ordinance), and *Colorado v 2896 West 64th Avenue*, 989 P2d 235 (Colo App, 1999) (upholding issuance of a permanent injunction prohibiting nude entertainment as a nuisance contrary to a local ordinance, previously found constitutional, that regulated places where nude entertainment could be provided). Accordingly, we hold that the issuance of an injunction to enforce Van Buren Township's constitutionally valid ordinance does not violate the First Amendment as a prior restraint without procedural safeguards.

### E. THE OVERBREADTH DOCTRINE

Defendant argues that the township's prohibition of nudity in establishments that serve alcohol is unconstitutionally overbroad because it bans even plunging necklines and thongs and "legitimate" nude or seminude theatrical performances (*Hair, Oh! Calcutta, Salome,* and *Dance*). Also, defendant notes that the ordinance does not distinguish between male or female nudity and argues that the ordinance even extends to exposure of body parts in the restroom of any bar in the township. Defendant contends that a ban on nudity must be no greater than necessary to address harmful secondary effects and that restrictions beyond "pasties and G-strings" limit the erotic message of dancers, rendering the ordinance overbroad. We disagree.

We review de novo whether a statute or ordinance is unconstitutional under the doctrines of vagueness or overbreadth. *Boomer, supra* at 538; *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001). We hold that plaintiff's ordinance is not unconstitutionally overbroad because there is no real and substan-

tial possibility that it will deter others not before the Court from engaging in protected expressive conduct—nude dancing at establishments not licensed to sell liquor. *Id.* at 96.

The constitutional doctrines of vagueness and overbreadth both curb arbitrary and discriminatory enforcement but are nonetheless distinct. *Plymouth Charter Twp v Hancock*, 236 Mich App 197, 199-200; 600 NW2d 380 (1999). The doctrines are often considered together because they are closely related, especially where claims of First Amendment violations are raised. *Id.* at 200, citing *Grayned v Rockford*, 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972) (a vague statute may deter protected speech). There are three grounds on which a statute may be held to be void because it is vague or overbroad. *Burns v Detroit (On Remand)*, 253 Mich App 608, 625; 660 NW2d 85 (2002), mod 468 Mich 881 (2003). A statute may be void for vagueness where: "(1) it does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; and (3) its coverage is overly broad and impinges on First Amendment freedoms." *People v Morey*, 230 Mich App 152, 163; 583 NW2d 907 (1998), aff'd 461 Mich 325; 603 NW2d 250 (1999).

A facial challenge to an ordinance on the ground that it is overbroad rests on the "prediction that third parties will refrain from protected expression because of the [ordinance]." *In re Chmura*, 461 Mich 517, 530; 608 NW2d 31 (2000). But " 'there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially

challenged on overbreadth grounds.' " *Id.* at 531, quoting *Los Angeles City Council v Taxpayers for Vincent*, 466 US 789, 801; 104 S Ct 2118; 80 L Ed 2d 772 (1984). Moreover, particularly where expressive conduct, and not mere speech, is involved, " 'the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " *Hill v Colorado*, 530 US 703, 732; 120 S Ct 2480; 147 L Ed 2d 597 (2000), quoting *Broadrick v Oklahoma*, 413 US 601, 615; 93 S Ct 2908; 37 L Ed 2d 830 (1973). See, also, *Burns, supra* at 626-627, and *Morey, supra* at 164. But the " 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.' " *Rogers, supra* at 96, quoting *Taxpayers for Vincent, supra* at 800.

In analyzing defendant's overbreadth challenge, we note that nudity is not protected expressive conduct, it is erotic nude dancing that is expressive conduct at the outer edges of the protection afforded by the First Amendment. *Pap's, supra* at 289. Also, unlike the defendant city's public decency ordinance in *Triplett Grille, Inc v Akron*, 40 F3d 129 (CA 6, 1994), on which defendant relies, plaintiff's ordinance does not ban nudity in all public places. The ban is limited to establishments that serve alcohol, *Jott, supra* at 540. That the ordinance broadly covers both male and female nudity does not imply an infirmity but, rather, reinforces the content-neutral aim of the ordinance to "eradicate the effects of 'undesirable behavior' stemming from a combination of alcohol and nudity." *Jott, supra* at 545-546. The "comprehensiveness of the statute is a virtue, not a vice, because it is evidence

against there being a discriminatory governmental motive." *Hill, supra* at 731. And tavern patrons using restroom facilities are generally not engaged in expressive conduct. The plain and legitimate sweep of the ordinance is to regulate trafficking in liquor by applying a prophylactic rule banning sexually explicit entertainment at licensed bars, cabarets, or taverns. *Jott, supra* at 540, citing *Felix v Young*, 536 F2d 1126, 1132 (CA 6, 1976). The ordinance simply does not present a real and substantial danger of sweeping within its ambit the presentation of theatrical productions that involve nudity; nor do the other hypothetical situations defendant imagines present a real and substantial danger of chilling protected speech. Accordingly, plaintiff's ordinance is not constitutionally overbroad. *Hill, supra* at 722-723; *Rogers, supra* at 96.

Our conclusion is further supported by the presumption of constitutional validity, *Burns, supra* at 627-628, and by the binding precedent of *Jott, supra.* Plaintiff's ordinance is identical to the ordinance held constitutional in *Jott* after this Court severed parts of the ordinance not reasonably related to the legitimate governmental interest involved. *Id.* at 548. Although *Jott* did not extensively analyze the overbreadth issue, it reversed the trial court's determination that Clinton Township's ordinance was unconstitutionally overbroad. *Jott, supra* at 537, 548. Under MCR 7.215(J)(1), the *Jott* Court's rejection of an overbreadth challenge binds this Court.

### F. THE VAGUENESS DOCTRINE

Defendant also argues that plaintiff's ordinance is unconstitutionally vague because a person of ordinary

intelligence cannot know what is prohibited, and no guidelines are provided to law enforcement. We again disagree.

"An ordinance is unconstitutionally vague if it (1) does not provide fair notice of the type of conduct prohibited or (2) encourages subjective and discriminatory application by delegating to those empowered to enforce the ordinance the unfettered discretion to determine whether the ordinance has been violated." *Hancock, supra* at 200. When a statute or ordinance is challenged on the ground that it is unconstitutionally vague, a court must review the entire text of the law, giving its words their plain ordinary meanings. *Rogers, supra* at 94; *Morey, supra* at 163. An ordinance is not vague if " 'it is clear what the ordinance as a whole prohibits.' " *Hill, supra* at 733, quoting *Grayned, supra* at 110. An ordinance provides fair notice when persons of ordinary intelligence have a reasonable opportunity to know what is prohibited. *People v Noble*, 238 Mich App 647, 652; 608 NW2d 123 (1999). Thus, an ordinance "is sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Id.*

The plain meaning of the words of the ordinance makes clear to persons of ordinary intelligence that it prohibits "nudity" in "any establishment licensed or subject to licensing by the Michigan Liquor Control Commission." Subsection 6-69(1), Van Buren Charter Township Code of Ordinances. See also *Jott, supra* at 536. Contrary to defendant's argument, a person of ordinary intelligence is not required to guess at the meaning of "nudity." And what the ordinance as a

whole prohibits is easily understood by persons of ordinary intelligence. Laws written in words cannot achieve the precision of a mathematical formula. *Hill, supra* at 733; *Grayned, supra* at 110. But it is clear that the ordinance as a whole prohibits nudity at establishments licensed to sell alcohol. Finally, because the ordinance is not vague, it does not confer unfettered discretion to those empowered to enforce the ordinance to determine whether it has been violated. *Owosso, supra* at 217; *Hancock, supra* at 200.

### G. DUE PROCESS

Defendant raises one other constitutional issue in the course of arguing that state law preempts plaintiff's ordinance: that its liquor license, together with entertainment and topless entertainment permits, constitute a property interest that cannot be taken without due process of law. Defendant waived this issue because it was not included in defendant's statement of questions on appeal. MCR 7.212(C)(5); *Persinger v Holst*, 248 Mich App 499, 507 n 2; 639 NW2d 594 (2001). Nevertheless, this Court may consider an issue raised in a nonconforming brief if it is one of law and the record is factually sufficient. *McKelvie v Auto Club Ins Ass'n*, 203 Mich App 331, 337; 512 NW2d 74 (1994). We briefly address this issue, and conclude it has no merit. See, e.g., *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 172; 568 NW2d 365 (1997).

Defendant's argument relies on *Bundo, supra,* which held a holder of a liquor license "has a 'property' interest in the renewal of his liquor license such that before he may be deprived of this interest he must be afforded rudimentary due process." *Bundo,*

*supra* at 704. Reliance on *Bundo* is misplaced. No denial, nonrenewal, or revocation of a liquor license was involved in this case. Instead, Van Buren Township enacted an ordinance pursuant to its broad police powers to protect the health, safety, and welfare of the public. While no person may be deprived of life, liberty, or property without due process of law, US Const, Am V; Const 1963, art 1, § 17; *Tolksdorf v Griffith*, 464 Mich 1, 7; 626 NW2d 163 (2001), no one has a vested right to the continuation of an existing law by precluding the amendment or repeal of the law, *Rookledge v Garwood*, 340 Mich 444, 457; 65 NW2d 785 (1954). A vested right is "an interest that the government is compelled to recognize and protect of which the holder could not be deprived without injustice." *Detroit v Walker*, 445 Mich 682, 699; 520 NW2d 135 (1994). But an interest " 'cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws.' " *Id.*, quoting *Minty v Bd of State Auditors*, 336 Mich 370, 390; 58 NW2d 106 (1953). That is the case here; consequently, defendant's argument fails on the merits.

### V. CONCLUSION

The trial court did not abuse its discretion in finding no basis for judicial disqualification. We also hold that under the totality of the circumstances, due process did not require judicial disqualification. We conclude that state law does not preempt Van Buren Township's ordinance. Finally, we hold that Van Buren Township's ordinance is constitutional and enforceable. Accordingly, we affirm the trial court's

grant of summary disposition and the issuance of a permanent injunction enforcing the ordinance.